[L. A. No. 29702. In Bank. Apr. 1, 1970.]

JEARLDINE PRUDHOMME, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Richard S. Buckley, Public Defender, James L. McCormick, Harold E. Shabo and Joel S. Peck, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Evelle J. Younger, District Attorney, Harry Wood, Arnold Gruminski and Maurice H. Oppenheim, Deputy District Attorneys, Thomas C. Lynch, Attorney General, and William E. James, Assistant Attorney General, for Real Party in Interest.

## OPINION

**BURKE, J.**—This case, and two other cases before this court,[1] raise important questions regarding the permissible extent of pretrial discovery by the prosecution in a criminal case. Petitioner herein, a defendant in a pending murder case, seeks to enjoin enforcement of a discovery order compelling her attorney to disclose to the prosecution the names, addresses and expected testimony of the witnesses petitioner intends to call at trial.[2]

Petitioner asserts that to enforce the foregoing order would violate the privilege against self-incrimination, the attorney-client privilege, the right to effective counsel, and the right to a fair trial. ■■■ We have concluded that the discovery order was in excess of the court's jurisdiction, and therefore void, in that it does not clearly appear from the face of the order or from the record below that the information demanded from petitioner cannot possibly have a tendency to incriminate her.

The People contend that the discovery order was proper under our decisions in *Jones* v. *Superior Court*, 58 Cal.2d 56 [22 Cal.Rptr. 879, 372 P.2d 919, 96 A.L.R.2d 1213], and *People* v. *Pike*, 71 Cal.2d 595 [78 Cal.Rptr. 672, 455 P.2d 776]. In *Jones*, we upheld a discovery order to the extent that it required a defendant in a rape case to disclose to the prosecution the names and addresses of the witnesses defendant intended to call, and the medical reports and X-rays he intended to introduce, in support of his defense of impotence. We relied upon the fact that several states had enacted statutory provisions requiring disclosure of alibi witnesses, and we noted that these provisions had been uniformly upheld against the claim that they violated the privilege against self-incrimination. (58 Cal.2d at pp. 61-62.) We concluded in *Jones* that disclosure of the foregoing information would not violate the privilege against self-incrimination or the attorney-client privilege, since the identity of defendant's witnesses and the existence of medical reports and X-rays necessarily would be revealed by defendant at trial, and since disclosure of that information could not assist the prose-

---

[1]*In re Marcario, post,* page 329 [85 Cal.Rptr. 135, 466 P.2d 679], and *Bradshaw* v. *Superior Court, post,* page 332 [85 Cal.Rptr. 136, 466 P.2d 680].

[2]Petitioner's attorney, in *In re Marcario, post,* footnote 1, seeks habeas corpus to annul contempt proceedings initiated upon his refusal to obey the discovery order at issue herein.

cution in preparing its case in chief against defendant, even though it could assist in rebutting his defense of impotence. (58 Cal.2d at pp. 61-62.)

In *People* v. *Pike, supra,* we relied upon *Jones* and held that it was not prejudicial error to require defense counsel to disclose to the prosecution the names, addresses and expected testimony of defense witnesses prior to the retrial of the penalty phase of a murder trial.

Neither *Jones* nor *Pike* is directly controlling on the question presented by the discovery order in the instant case. *Jones* did not state that a defendant could be required to disclose the names and addresses of *all* defense witnesses, without regard to the subject matter and possible incriminatory nature of their testimony; nor did *Jones* involve an order seeking disclosure of the "expected testimony" of defense witnesses. *Pike,* in finding no *prejudicial* error in the discovery order involved therein, did not purport to extend permissible discovery beyond the limits previously established in *Jones,* upon which *Pike* exclusively relied. (See also *People* v. *Lopez,* 60 Cal.2d 223, 244 [32 Cal.Rptr. 424, 384 P.2d 16].)

Our decision in *Jones* was based primarily upon our conviction that since discovery is a valuable tool for ascertaining the truth, it should be conducted along a "two-way street" in criminal as well as civil proceedings, to the extent permitted by constitutional principles.[3] We readily acknowledge that pretrial disclosure would greatly facilitate the administration of criminal justice by minimizing the element of surprise, avoiding unnecessary delays and continuances, reducing inconvenience to the court, counsel, jurors and witnesses, and permitting more effective pretrial preparation. However, certain significant developments in the law since *Jones* was decided in 1962 caution us not to extend its holding beyond its facts without careful consideration of the possible effects which such an extension could have upon the accused's rights and privileges, and especially his fundamental right not to be compelled to be a witness against himself.[4]

■ First of all, the United States Supreme Court, in a series of landmark decisions, has placed increasing emphasis upon the role played by the Fifth Amendment privilege against self-incrimination in protecting the rights of the accused. The privilege is now an element of due process protected against state action by the Fourteenth Amendment, and federal standards govern in state proceedings (*Malloy* v. *Hogan,* 378 U.S. 1 [12

---

[3] 58 Cal.2d at pages 58-60; see also Traynor, *Ground Lost and Found in Criminal Discovery,* 39 N.Y.U.L. Rev. 228, 243-250; Louisell, *Criminal Discovery and Self-Incrimination: Roger Traynor Confronts the Dilemma,* 53 Cal.L.Rev. 89.

[4] The privilege against self-incrimination appears in various forms in state and federal constitutional and statutory provisions. (See U.S. Const., 5th Amend.; Cal. Const., art. I, § 13; Pen. Code, §§ 688, 1323; Evid. Code, §§ 930, 940.)

L.Ed.2d 653, 84 S.Ct. 1489]); the prosecution and trial court are now forbidden to comment or instruct upon the accused's silence, or his reliance upon the privilege (*Griffin* v. *California,* 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229]); and the application of the privilege to the accusatory stage has been considerably broadened (*Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]).

In addition, we note that in 1966 rule 16, subdivision (c) of the Federal Rules of Criminal Procedure was promulgated by the United State Supreme Court under its rulemaking power, to provide for certain limited discovery by the prosecution. As we are now governed by federal standards in determining the scope of the privilege against self-incrimination, we can profit from a review of the federal approach to criminal discovery. Rule 16, subdivision (c), which is conditioned upon defendant's request for discovery from the government, permits the court in its discretion to require defendant to disclose to the government "scientific or medical reports, books, papers, documents, tangible objects, or copies or portions thereof, which the defendant intends to produce at the trial and which are within his possession, custody or control, upon a showing of materiality to the preparation of the government's case and that the request is reasonable."

Thus, federal rule 16, subdivision (c), is limited to the "reasonable" disclosure of physical evidence; there is no provision authorizing disclosure of names, addresses or expected testimony of defense witnesses.[5] However, even the limited discovery contemplated under rule 16, subdivision (c), has been attacked as violative of the accused's privilege against self-incrimination.[6]

Furthermore, recent cases in the area of criminal discovery demonstrate increased concern that an accused's Fifth Amendment rights be not overlooked in the course of pursuing the truth along *Jones'* "two-way street."[7] As stated above, *Jones* relied heavily upon the assumed constitutionality of state "alibi" statutes. However, the federal district court in

---

[5]See also the recommendations of the Advisory Committee on Pretrial Proceedings, American Bar Association, contained in Standards Relating to Discovery and Procedure Before Trial (Tentative Draft 1969), Part III, which "subject to constitutional limitations," limit disclosure to medical and scientific reports or any other reports or statements of *experts* which defense counsel intends to use at trial.

[6]See Wright, *Proposed Changes in Federal Procedure,* 35 F.R.D. 317, 327-328; Mr. Justice Douglas' Statement, 39 F.R.D. 276, 277-279; *United States* v. *Fratello* (S.D.N.Y. 1968) 44 F.R.D. 444; Smith and McCollom, *Counterdiscovery in Criminal Cases: Fifth Amendment Privileges Abridged* (1968) 54 A.B.A.J. 256; Moore, *Criminal Discovery* (1968) 19 Hastings L.J. 865, 910-917.

[7]Some commentators have concluded that *Jones* reached, or even exceeded, constitutional limits. See Note (1963) 63 Colum.L.Rev. 361; Note (1963) 15 Stan.L. Rev. 700; Wilder, *Prosecution Discovery and Privilege Against Self-Incrimination* (1967) 6 Am. Crim. L. Q. 3; Smith and McCollom, *supra,* footnote 6.

*Cantillon* v. *Superior Court* (C.D. Cal. 1969) 305 F.Supp. 304 (appeal filed with 9th Cir.) granted habeas corpus to annul a discovery order which required petitioner-attorney to disclose to the prosecution the names of the alibi witnesses whom defendant-client intended to call at trial. The court reasoned that to compel such disclosure would violate defendant's privilege against self-incrimination, the attorney-client privilege, and the right to effective counsel.

Finally, the United States Supreme Court recently granted certiorari in *Williams* v. *Florida* (Fla.App.) 224 So.2d 406, which had upheld Florida's alibi statute against the claim that it violated the accused's Fifth Amendment rights. (See also *United States* v. *Kordel,* (1970) 397 U.S. 1 [25 L.Ed. 2d 1, 90 S.Ct. 763].)

We had occasion, in *People* v. *Schader,* 71 Cal.2d 761, 770 [80 Cal. Rptr. 1, 457 P.2d 841], to analyze the policy which underlies the privilege against self-incrimination and recognized, ". . . with the United States Supreme Court, 'that the American system of criminal prosecution is accusatorial, not inquisitorial, and that the Fifth Amendment privilege is its essential mainstay. . . . Governments, state and federal, are thus constitutionally compelled to establish guilt by evidence independently and freely secured, and may not by coercion prove a charge against the accused out of his own mouth.' (*Malloy* v. *Hogan* (1964) 378 U.S. 1, 7-8 . . . .) The People must 'shoulder the entire load' of their burden of proof in their case in chief, without assistance either from the defendant's silence or from his compelled testimony. [Citations]." (See also *Murphy* v. *Waterfront Com. of N.Y. Harbor,* 378 U.S. 52, 55 [12 L.Ed.2d 678, 681-682, 84 S.Ct. 1594].)

However, we also pointed out in *Schader* that once a defendant voluntarily elects to testify in his own defense, nothing prevents the prosecutor from inquiring fully into the facts and circumstances surrounding his assertions or from introducing evidence through cross-examination which explains or refutes his statements. (71 Cal.2d at p. 770.)

Similarly, in *Jones* we explained that "Unlike an ordinary witness, a defendant need make no showing that the answer or document sought may be incriminating [citation], for the very fact that the prosecution seeks it, establishes that in the prosecution's view it may be incriminating [citation]." (58 Cal.2d at p. 60.) Nevertheless, in *Jones* we permitted the prosecution to discover certain limited information pertaining to defendant's defense

of impotence based upon our conviction that such information could not possibly incriminate him.

Thus, if we analyze *Jones* in the light of the policy considerations discussed in *Schader,* it is apparent that the principal element in determining whether a particular demand for discovery should be allowed is not simply whether the information sought pertains to an "affirmative defense,"[8] or whether defendant intends to introduce or rely upon the evidence at trial, but whether disclosure thereof conceivably might lighten the prosecution's burden of proving its case in chief. Although the prosecution should not be completely barred from pretrial discovery, defendant must be given the same right as an ordinary witness to show that disclosure of particular information could incriminate him.

An ordinary witness need not actually prove the existence of an incriminatory hazard as that would surrender the very protection which the privilege against self-incrimination was designed to guarantee. Instead, the privilege forbids compelled disclosures which could serve as a "link in a chain" of evidence tending to establish guilt of a criminal offense; in ruling upon a claim of privilege, the trial court must find that it clearly appears from a consideration of all the circumstances in the case that an answer to the challenged question cannot possibly have a tendency to incriminate the witness. (*Hoffman* v. *United States,* 341 U.S. 479, 486-488 [95 L.Ed. 1118, 1123-1125, 71 S.Ct. 814]; *Malloy* v. *Hogan, supra,* 378 U.S. 1, 11-12 [12 L.Ed.2d 653, 661-662]; *Zonver* v. *Superior Court,* 270 Cal.App.2d 613, 620 [76 Cal.Rptr. 10]; *Cohen* v. *Superior Court,* 173 Cal.App.2d 61, 68-70 [343 P.2d 286]; Evid. Code, § 404.)

Applying the foregoing test to the discovery order in the instant case, neither the order nor the record below enables us to say that it clearly appears that disclosure to the prosecution of the names, addresses and expected testimony of petitioner's witnesses cannot possibly tend to incriminate her. Unlike the situation in *Jones,* the order herein is not limited to any particular defense or category of witnesses from which a court could attempt to determine its incriminatory effect. It requires no great effort or imagination to conceive of a variety of situations wherein the disclosure of the expected testimony of defense witnesses, or even their names and addresses, could easily provide an essential link in a chain of evidence underlying the prosecution's case in chief.[9]

---

[8]See *Jones, supra,* 58 Cal.2d at page 61. Several commentators have pointed out the difficulty in distinguishing an "affirmative" defense from any other line of defense in a criminal case. See Louisell, *supra,* 53 Cal.L.Rev. at page 92, footnote 18; Moore, *supra,* 19 Hastings L.J. at pages 904-905; *Jones, supra,* 58 Cal.2d 56, 66-67 (con. & dis. opinion by Peters, J.).

[9]As stated in *Malloy* v. *Hogan, supra,* 378 U.S. 1, 13 [12 L.Ed.2d at p. 662],

For example, if a defendant in a murder case intended to call witness A to testify that defendant killed in self-defense, pretrial disclosure of that information could provide the prosecution with its sole eyewitness to defendant's homicide. Similarly, consider the effect of disclosing the name or expected testimony of witness B, whom defendant intends to call only as a "last resort" to testify that defendant only committed a lesser-included offense.

. Thus the order before us is too broad, for it could require petitioner to disclose information which might serve as a link in a chain of evidence tending to establish her guilt of a criminal offense. In ruling upon petitioner's claim of privilege, the trial court failed to inquire into the incriminatory nature of the information sought, acting upon the assumption that *Jones* and *Pike* authorized disclosure without regard to possible incriminatory effect. Since the order was for this reason violative of petitioner's constitutional rights, it was beyond the court's jurisdiction and therefore void and unenforceable.

We do not intend to suggest that the prosecution should be barred from *any* discovery in this, or any other, case. A reasonable demand for factual information which, as in *Jones,* pertains to a particular defense or defenses, and seeks only that information which defendant intends to introduce at trial, may present no substantial hazards of self-incrimination and therefore justify the trial judge in determining that under the facts and circumstances in the case before him it clearly appears that disclosure cannot possibly tend to incriminate defendant.[10] However, unless those criteria are met, discovery should be refused.[11]

---

footnote 9, quoting from an earlier case, " 'in determining whether the witness really apprehends danger in answering a question, the judge cannot permit himself to be skeptical; rather must he be acutely aware that in the deviousness of crime and its detection *incrimination may be approached and achieved by obscure and unlikely lines of inquiry.'* " (Italics added.)

[10]Unless the order is confined to information which the defendant intends to disclose at trial, the order could also violate the attorney-client privilege, without regard to its possible incriminatory effect. However, the defendant cannot legitimately claim the privilege as to information which he will voluntarily disclose at trial. See *Jones, supra,* 58 Cal.2d at pages 61-62.

[11]To the extent *People* v. *Pike, supra,* 71 Cal.2d 595, *Ruiz* v. *Superior Court,* 275 Cal.App.2d 633 [80 Cal.Rptr. 523], *McGuire* v. *Superior Court,* 274 Cal. App.2d 583 [79 Cal.Rptr. 155], and *People* v. *Dugas,* 242 Cal.App.2d 244 [51 Cal.Rptr. 478], are inconsistent with the views expressed herein, those cases are disapproved.

Let a peremptory writ of prohibition issue restraining respondent court from enforcing its discovery order herein.

Mosk, Acting C. J., McComb, J., Tobriner, J., and Peek, J.,* concurred.

**PETERS, J.**—I agree with the conclusion reached in this case and its two companion cases (*In re Marcario, post,* p. 329 [85 Cal.Rptr. 135, 466 P.2d 679]; *Bradshaw* v. *Superior Court, post,* p. 332 [85 Cal.Rptr. 136, 466 P.2d 680]) that to compel the discovery here sought would be to violate the defendant's constitutional right. But I disagree with those portions of the majority opinions in these companion cases insofar as they give even implied approval to the rules announced in *Jones* v. *Superior Court,* 58 Cal.2d 56 [22 Cal.Rptr. 879, 372 P.2d 919, 96 A.L.R.2d 1213], and *People* v. *Pike,* 71 Cal.2d 595 [78 Cal.Rptr. 672, 455 P.2d 776]. For the reasons set forth in my dissents in those cases, and because of the recent developments occurring since *Jones* was decided, mentioned in the majority opinion, *Jones* and *Pike* should be forthrightly disapproved and not given a further uncertain and confused life. Discovery is not a "two-way street" because of the constitutional rights of defendants not accorded the prosecution, and we should frankly and directly so hold.

**SULLIVAN, J.**—I concur in the judgment. I agree with the conclusion reached by the majority that the discovery order here under review was violative of petitioner's constitutional rights and was therefore void and unenforceable. However, I do not agree with the rationale of, nor except as stated above do I join in, the majority opinion.

The petition of the real party in interest for a rehearing was denied April 29, 1970.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Acting Chairman of the Judicial Council.