[Civ. No. 51777. First Dist., Div. Two. Oct. 30, 1981.]

MAURICE JOHN KEENAN, Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF
SAN FRANCISCO, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

M. Gerald Schwartzbach, under appointment by the Court of Appeal, for Petitioner.

No appearance for Respondent.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien and William D. Stein, Assistant Attorneys General, Clifford K. Thompson, Jr., Ann K. Jensen and Morris Lenk, Deputy Attorneys General, for Real Party in Interest.

OPINION

SMITH, J.—Petitioner Maurice Keenan, who is charged with a capital offense, seeks a writ of mandate compelling respondent superior court to grant petitioner's motions 1) to discover the prosecution's policy regarding the charging of "special circumstances" (Pen. Code, § 190.2), 2) to have an independent and confidential analysis of physical evidence performed by defense criminalists, and 3) to order the prosecution to advise petitioner of the specific evidence that the prosecution intends to introduce in aggravation of the sentence at the penalty phase of trial pursuant to section 190.3 of the Penal Code.[1]

On July 11, 1979, a complaint was filed in which petitioner and codefendant Robert Kelly were charged with murder, burglary, robbery, attempted robbery, and various firearm offenses. (§§ 187, 459, 211, 664, 12022.5.) Scheduled for arraignment in the municipal court on July 12, 1979, petitioner escaped from his holding cell. He was recaptured on August 6, 1979, after being arrested in Miami, Florida. A second complaint against the codefendants was filed on August 8, 1979. Neither the first nor the second complaint contained special circumstances allegations. On August 21, 1979, a third complaint was filed, and, for the first time, special circumstances justifying the imposition of the death penalty were alleged as to petitioner.

Discovery was provided to the defense during August and September 1979. A defense criminalist, Charles Morton, examined the murder weapon and clip, the report of Richard Gryzbowski (a police depart-

---

[1]All references will be to the Penal Code unless otherwise indicated.

ment criminalist), the coroner's photographs, and one page of the necropsy report. On March 20, 1980, Morton personally test-fired the murder weapon for purposes of distance determination. He also examined the coroner's bullet and spent casings and made microscopic comparisons with the test-fired bullet.

In March 1980, petitioner's court-appointed counsel sought to withdraw as attorney of record. That request was granted by Division Four of this court on July 23, 1980. (*Yanowitz* v. *Superior Court*, 1 Civ. 49158.) Thereafter, on October 7, 1980, petitioner's present counsel was appointed to represent petitioner.

On January 13, 1981, petitioner moved the trial court for an order directing the prosecution to furnish discovery of the current policy and procedures in the San Francisco District Attorney's office with respect to the charging of special circumstances;[2] a list of every case prosecuted in which a special circumstance was alleged pursuant to section 190.2, as approved November 7, 1978;[3] a list of every case prosecuted by the

---

[2]With respect to the policy and procedures, petitioner made the following specific requests: "(a) Who is responsible for making the decision whether or not to allege a special circumstance? (b) What factors are to be considered in making the decision? (c) What provisions, if any, exist for recording the decision? (d) At what point in the course of the prosecution is the decision to be made and/or reassessed? (e) What factors are to be considered in deciding to amend a complaint or an information or to supersede an indictment by adding a special circumstance allegation? (f) What provisions are there for recording the decision to add a special circumstance allegation?

"With respect to the matters specified in items (a) through (f), indicate in what ways, if any, the policies of the district attorney's office in August, 1978, differed from current policies.

"Provide all policy manuals, regulations, guidelines, policy statements, internal memoranda and statements, written and oral, relied on by the district attorney's office at any time after November 7, 1978, pertaining to the procedures by which a decision is made whether or not to allege a special circumstance in a prosecution brought under Penal Code section 190 (as approved on November 7, 1978), indicating for each: (a) The author(s) of the material; and (b) The periods of time during which the material was relied upon."

[3]More specifically petitioner requested:
(a) The case name and court docket number;
(b) The attorney responsible for the prosecution of the case;
(c) The name of each defendant;
(d) The dates of all complaints, informations and indictments filed or brought;
(e) The charges alleged in each of the above against each defendant (or provide copies of the charging papers);
(f) For each defendant, the date upon which a special circumstance was first alleged;
(g) The specific special circumstances alleged against each defendant;
(h) The reasons for the decision(s) to allege special circumstances;
(i) If all special circumstance allegations against a particular defendant were ulti-

district attorney's office in which a defendant was charged with murder, but the death penalty was not sought, in which robbery, kidnaping, the performance of lewd or lascivious act upon the person of a child under the age of 14, oral copulation, burglary, arson, train wrecking, or a previous conviction for a first or second degree murder was alleged against the same defendant, but in which no special circumstance was alleged;[4] a list of every case in which a defendant was charged with murder in which no special circumstance was ever alleged against the defendant, but in which it was known to the district attorney's office prior to the disposition of the case that one or more of the facts stated in section 190.2, subdivision (a), was applicable;[5] and, finally, all records, reports, handwritten notes, memoranda, staff meeting minutes, recommenda-

---

mately dropped, indicate: (1) The defendant involved; (2) When this occurred; (3) Why this occurred;

(j) If no special circumstances were alleged against a particular defendant in the initial complaint but one or more were subsequently added, indicate: (1) The defendant involved; (2) When the amendments were made; (3) Whey they were made;

(k) If no special circumstances were alleged against one or more defendants, indicate: (1) The defendant involved; (2) The reasons for the decision(s) not to allege any special circumstances;

(l) The disposition of the case, including: (1) The plea, if any; (2) The verdict, if any; and (3) The sentence, if any;

(m) If a sentencing hearing occurred pursuant to Penal Code section 190.3, indicate: (1) Whether the prosecution requested the death penalty or did not request the death penalty; (2) Why the death penalty was or was not requested;

(n) With respect to the decisions referred to in subsections (h), (i)(3), (k)(2) and (m)(2), above, indicate the attorney(s) who participated in making them.

With respect to the decision referred to in items (h), (i)(3), (j)(3), (k)(2), (m)(2), petitioner requested all documents, records, memoranda, notes, minutes, writings, recommendations, communications and statements and summaries of any oral conversations and statements, indicating the reasons for which such decisions were made and who made them.

[4]For each such case, petitioner requested: (a) the case name and court docket number; (b) the name of the defendant; (c) the attorney responsible for the prosecution of the case; (d) the charges; (e) the reasons for not alleging a special circumstance; (f) by whom the decision was made;

With respect to the decision referred to in item (e), petitioner requested all documents, records, memoranda, notes, minutes, writings, recommendations, communications and statements and summaries of any oral conversations and statements, indicating the reasons for which such decisions were made and who made them.

[5]For each such case, petitioner requested: (a) the case name and court docket number; (b) the name of the defendant; (c) the attorney responsible for the prosecution of the case; (d) the applicable fact stated in Penal Code section 190.2, subdivision (a); (e) the reasons for not alleging a special circumstance; (f) by whom the decision was made.

With respect to the decision referred to in item (e), petitioner requested all documents, records, memoranda, notes, minutes, writings, recommendations, communications and statements and summaries of any oral conversations and statements, indicating the reasons for which such decisions were made and who made them.

tions, writings and statements concerning the instant action.[6] The motion was denied.

On January 21, 1981, petitioner moved the trial court for an order directing the district attorney, inter alia, to release, for a reasonable period of time, to the custody of defense counsel or defense criminalist, Lindberg Miller, all of the physical evidence connected with the charged offenses in this action and to provide defense counsel notice of the particular evidence to be introduced by the prosecution as evidence of aggravating circumstances, pursuant to section 190.3. The motion was granted in part and denied in part. With respect to the release of evidence, the court ordered the prosecution "to allow defense criminalists to inspect, test and examine all physical evidence which was seized during the course of the investigation of this case. However, in order to protect the integrity of said evidence, the evidence shall not be removed from the San Francisco Hall of Justice and the custody of the San Francisco Police Department, and the prosecution may monitor said inspections, testing and examinations by having a representative of the San Francisco District Attorney's Office or the San Francisco Police Department present during the course of all inspections, testing and examinations conducted by defense criminalists." Petitioner's request for notice of the particular evidence to be introduced by the prosecution as evidence of aggravating circumstances was denied without prejudice to its being renewed before the trial court. A petition for a writ of mandate compelling the superior court to grant all of petitioner's discovery motions followed.

I. *Petitioner was properly denied discovery of information pertaining to prosecutorial decisions to charge special circumstances in a murder case.*

 Petitioner seeks to discover information pertaining to the standards, if any, that are applied by the San Francisco District Attorney in

---

[6]Specifically, petitioner requested: (a) the date on which the factual basis for the allegation of special circumstances was first known by the district attorney's office; (b) the participants in, date and substance of, discussions at any meeting at which the question of whether to seek the death penalty was discussed; (c) the reasons why the allegation of special circumstances were not made in either the original complaint or the first amended complaint; (d) the reasons why the allegations of special circumstances were made in the second amended complaint; (e) any factual information obtained after the filing of the original complaint which influenced the decision to allege special circumstances; (f) the date upon which such factual information was received by the district attorney's office.

determining whether to charge special circumstances justifying the imposition of capital punishment. He claims this information will allow him to ascertain whether the district attorney has violated his constitutional rights by a standardless charging of special circumstances.[7]

Petitioner begins his argument by citing the well established *Murgia* rule, rooted in equal protection, that pretrial discovery is available to a defendant to show invidious prosecutorial discrimination in the enforcement of penal statutes. (*Murgia* v. *Municipal Court* (1975) 15 Cal.3d 286, 306 [124 Cal.Rptr. 204, 540 P.2d 44]; *Griffin* v. *Municipal Court* (1977) 20 Cal.3d 300, 306 [142 Cal.Rptr. 286, 571 P.2d 997].) However, petitioner does not claim invidious discrimination in the instant case. Rather, citing *Gregg* v. *Georgia* (1976) 428 U.S. 153 [49 L.Ed.2d 859, 96 S.Ct. 2909] and *Furman* v. *Georgia* (1972) 408 U.S. 238 [33 L.Ed.2d 346, 92 S.Ct. 2726], he argues that a standardless prosecutorial charging of special circumstances contravenes the due process clauses of the Fifth and Fourteenth Amendments and the due process clause of article I, section 15, of the California Constitution.

Objective standards are constitutionally mandated in the penalty phase of death penalty cases from the time the jury considers imposition of the death penalty through the time of appellate review. (*Gregg* v. *Georgia, supra*, 428 U.S. at p. 198 [49 L.Ed.2d at p. 888].) In *Furman* v. *Georgia, supra*, 408 U.S. 238, the United States Supreme Court held that standardless sentencing in death penalty cases violates a defendant's right to be free from cruel and unusual punishment. (See *id.*, at p. 240 (conc. opn. of Douglas, J.), pp. 291-295 (conc. opn. of Brennan, J.), p. 306 (conc. opn. of Stewart, J.), p. 310 (conc. opn. of White, J.) [33 L.Ed.2d at pp. 350, 379-382, 388, 390]; see also *Gregg* v. *Georgia, supra*, 428 U.S. at pp. 188-189 (opn. of Stewart, Powell and Stevens, JJ.), pp. 220-221 (conc. opn. of White, J.) [49 L.Ed.2d at pp. 883, 900-901].)

Petitioner claims there is no plausible reason for not extending this holding to the district attorney's initial decision to charge special circumstances. However, petitioner overlooks the plurality opinion of

---

[7]We note that, generally speaking, access to information concerning the conduct of both state and local agencies is a right of all citizens. (See Gov. Code, § 6250 et seq.) Accordingly, with the exception of those particular records exempted by section 6254 of the Government Code, public records are open to inspection by the general public. However, with respect to the more detailed information that petitioner now wishes to discover, we must look to case law.

Justices Stewart, Powell, and Stevens in *Gregg, supra,* at pages 199-200 [49 L.Ed.2d at page 199], which rejected this argument: "First, the petitioner focuses on the opportunities for discretionary action that are inherent in the processing of any murder case under Georgia law. He notes that the state prosecutor has unfettered authority to select those persons whom he wishes to prosecute for a capital offense and to plea bargain with them . . . . [¶] The existence of these discretionary stages is not determinative of the issues before us. At each of these stages an actor in the criminal justice system makes a decision which may remove a defendant from consideration as a candidate for the death penalty. . . . Nothing in any of our cases suggests that the decision to afford an individual defendant mercy violates the Constitution. *Furman* held only that, in order to minimize the risk that the death penalty would be imposed on a capriciously selected group of offenders, the decision to impose it had to be guided by standards so that the sentencing authority would focus on the particularized circumstances of the crime and the defendant." (See also *Proffitt* v. *Florida* (1976) 428 U.S. 242, 254 [49 L.Ed.2d 913, 924, 96 S.Ct. 2960]; *Jurek* v. *Texas* (1976) 428 U.S. 262, 274 [49 L.Ed.2d 929, 939-940, 96 S.Ct. 2950].) A footnote to this passage further states: "The petitioner's argument is nothing more than a veiled contention that *Furman* indirectly outlawed capital punishment by placing totally unrealistic conditions on its use. In order to repair the alleged defects pointed to by the petitioner, it would be necessary to require that prosecuting authorities charge a capital offense whenever arguably there had been a capital murder . . . . Such a system, of course, would be totally alien to our notions of criminal justice. [¶] Moreover, it would be unconstitutional. Such a system in many respects would have the vices of the mandatory death penalty statutes we hold unconstitutional today in *Woodson* v. *North Carolina, post,* p. 280, and *Roberts* v. *Louisiana, post,* p. 325." (*Gregg* v. *Georgia, supra,* 428 U.S. at pp. 199-200, fn. 50 [49 L.Ed.2d at p. 889].)

In his concurring opinion, Justice White, with whom Chief Justice Burger and Justice Rehnquist joined, reached the same conclusion: "Petitioner's argument that prosecutors behave in a standardless fashion in deciding which cases to try as capital felonies is unsupported by any facts. Petitioner simply asserts that since prosecutors have the power not to charge capital felonies they will exercise that power in a standardless fashion. This is untenable. Absent facts to the contrary, it cannot be assumed that prosecutors will be motivated in their charging decision by factors other than the strength of their case and the likelihood that a jury would impose the death penalty if it convicts. Unless

prosecutors are incompetent in their judgments, the standards by which they decide whether to charge a capital felony will be the same as those by which the jury will decide the questions of guilt and sentence. Thus defendants will escape the death penalty through prosecutorial charging decisions only because the offense is not sufficiently serious; or because the proof is insufficiently strong. This does not cause the system to be standardless any more than the jury's decision to impose life imprisonment on a defendant whose crime is deemed insufficiently serious or its decision to acquit someone who is probably guilty but whose guilt is not established beyond a reasonable doubt. ... [¶] Petitioner's argument that there is an unconstitutional amount of discretion in the system which separates those suspects who receive the death penalty from those who receive life imprisonment, a lesser penalty, or are acquitted or never charged, seems to be in final analysis an indictment of our entire system of justice. Petitioner has argued, in effect, that no matter how effective the death penalty may be as a punishment, government, created and run as it must be by humans, is inevitably incompetent to administer it. This cannot be accepted as a proposition of constitutional law." (*Gregg* v. *Georgia, supra*, 428 U.S. at pp. 225-226 [49 L.Ed.2d at pp. 903-904]; see also *Roberts* v. *Louisiana* (1976) 428 U.S. 325, 348-349 [49 L.Ed.2d 974, 990, 96 S.Ct. 3001] (dis. opn. of White, J.).)

Petitioner's argument has been raised in a handful of cases from other jurisdictions and, in each instance, relying upon the above-quoted passages from *Gregg*, the courts have concluded that the exercise of prosecutorial discretion does not deprive a defendant accused of a capital offense of his constitutional rights. (E.g. *Downs* v. *Florida* (Fla. 1980) 386 So.2d 788, 795, cert. den. 449 U.S. 976 [66 L.Ed.2d 238, 101 S.Ct. 387]; *State* v. *Martin* (La. 1979) 376 So.2d 300, 311, cert. den. 449 U.S. 998 [66 L.Ed.2d 238, 101 S.Ct. 540]; *People* ex rel. *Carey* v. *Cousins* (1979) 77 Ill.2d 531, 540-543 [397 N.E.2d 809]; *State* v. *Simants* (1977) 197 Neb. 549 [250 N.W.2d 881, 888-890], U.S. cert. den. in 434 U.S. 878 [54 L.Ed.2d 158, 98 S.Ct. 231], rehg. den., 434 U.S. 961 [54 L.Ed.2d 322, 98 S.Ct. 496]; *State* v. *Richmond* (1976) 114 Ariz. 186 [560 P.2d 41, 50], cert. den. 433 U.S. 915 [53 L.Ed.2d 1101, 97 S.Ct. 2988]; *Cade* v. *State* (Ala.Crim.App. 1978) 375 So.2d 802, 825-826; *Bodde* v. *Texas* (Tex.Crim.App. 1978) 568 S.W.2d 344, 348; *State* v. *Gallegos* (1976) 27 Ariz.App. 538 [556 P.2d 1141, 1142]; see also *Spinkellink* v. *Wainwright* (5th Cir. 1978) 578 F.2d 582, 606-609, cert. den. 440 U.S. 976 [59 L.Ed.2d 796, 99 S.Ct. 1548], rehg. den. 441 U.S. 937 [60 L.Ed.2d 667, 99 S.Ct. 2064].)

Petitioner's attack on the exercise of prosecutorial discretion on the basis of the California Constitution, being totally unsupported by authority, is similarly unpersuasive. Petitioner cites *People v. Frierson* (1979) 25 Cal.3d 142 [158 Cal.Rptr. 281, 599 P.2d 587] in support of this argument. The *Frierson* case makes no mention of the exercise of discretion by a district attorney in the charging of a criminal defendant and fails, therefore, to give substance to petitioner's position.

II. *There was no abuse of discretion by the trial court in its order regarding the testing of physical evidence.*

■ The petitioner in the court below sought to examine and scientifically test the physical evidence in the case. The trial court ordered the prosecution to: "allow defense criminalists to inspect, test and examine all physical evidence which was seized during the course of the investigation of this case. However, in order to protect the integrity of said evidence, the evidence shall not be removed from the San Francisco Hall of Justice and the custody of the San Francisco Police Department, and the prosecution may monitor said inspections, testing and examinations by having a representative of the San Francisco District Attorney's Office or the San Francisco Police Department present during the course of all inspections, testing and examinations conducted by defense criminalists."

No one disputes petitioner's right independently to test this evidence. However, petitioner objects to that portion of the court's order prohibiting the removal of the evidence from police custody and granting authorities the right to monitor any testing by petitioner.

First, petitioner maintains, based upon the declarations of his two forensic experts alleging that they could not attest to the precision of police lab equipment and that they would not be provided with sufficient time and space within which to conduct their tests, that the trial court's order effectively undermines his right to test evidence in police custody.

The declarations of his forensic experts, however, were not based upon actual experience but rather upon information and belief. Moreover, petitioner overlooks the clear statement of the court when the order was issued: "I don't know the arrangements that are made, but I presume that the evidence is provided in a room and a space provided and equipment is provided. He [the defense expert] can bring his own

equipment. He can conduct any tests he wants there. And he doesn't have to disclose anything to the crime laboratory or any of their representatives or the district attorney. And if there's some problems, you can approach the court again."

This statement from the bench at the time of the issuance of the order complained of makes it clear that the court was committed to protecting petitioner's right to test the evidence in question. The court expressed a willingness to facilitate testing under conditions acceptable to petitioner and made its order subject to future modification to accomplish this purpose. Under these circumstances, his argument that the court's order undermined his right to test the evidence in question must be rejected.

Next, citing *Prudhomme* v. *Superior Court* (1970) 2 Cal.3d 320 [85 Cal.Rptr. 129, 466 P.2d 673] and its progeny, petitioner claims that the monitoring permitted by the order complained of violates his right against self-incrimination. He further maintains that such monitoring will violate his attorney-client privilege.

Since these arguments, like the previous one, are based upon a misunderstanding of the order complained of and an ignorance of statements of the court qualifying its order, it is not necessary to address them on their merits. The record shows that police monitoring was to be limited to the taking of reasonable precautions to prevent the loss or destruction of the evidence, and petitioner was encouraged to seek further assistance from the court to insure that defense testing was conducted in reasonable privacy.[8]

III. *Evidence to be offered in aggravation of sentence*

■ Finally, petitioner contends that the trial court's order that, in effect, permits the prosecution to wait until trial to advise petitioner of the specific evidence of aggravating circumstances it intends to offer at the penalty phase of this case violates section 190.3 in failing to give petitioner a reasonable period of time prior to trial in which to adequately prepare for that phase of the proceedings. We agree.

---

[8]The court stated: "... if your expert feels someone standing there looking over his shoulder, can't work in reasonable privacy, he should advise you and you can come back and I may change the order."

Section 190.3 provides, in pertinent part: "Except for evidence in proof of the offense or special circumstances which subject a defendant to the death penalty, no evidence may be presented by the prosecution in aggravation unless notice of the evidence to be introduced has been given to the defendant within a reasonable period of time as determined by the court, *prior to trial.*" (Italics supplied.)

Provisions of the penal statute should be construed "according to the fair import of their terms, with a view to effect its objects and to promote justice." (Pen. Code, § 4; *People* v. *King* (1978) 22 Cal.3d 12, 23 [148 Cal.Rptr. 409, 582 P.2d 1000].) Even where statutory language is reasonably susceptible of different interpretations, the construction more favorable to the defendant should be adopted. (*People* v. *Boyd* (1979) 24 Cal.3d 285, 295 [155 Cal.Rptr. 367, 594 P.2d 484].) Here, it is clear that the Legislature intended that defendants charged with special circumstances justifying the imposition of the death penalty be informed of the evidence to be used in aggravation within a reasonable period *before* the trial commences in order to properly prepare for the penalty phase.

Let a peremptory writ of mandate issue directing the trial court to vacate its order denying petitioner's request for notice of the particular evidence to be introduced in support of the charge of aggravated circumstances and to issue a new order granting said request by petitioner. In all other respects the petition is denied.

Rouse, Acting P. J., concurred.

MILLER, J.—I respectfully dissent.

The seriousness of charging, and possibly imposing, the death penalty deserves close scrutiny of the entire judicial process, including the initial charging of special circumstances.

It is well established that "an accused in a criminal prosecution may compel discovery by demonstrating that the requested information will facilitate the ascertainment of the facts and a fair trial. [Citations.] The requisite showing may be satisfied by general allegations which establish some cause for discovery other than 'a mere desire for the benefit of all information which has been obtained by the People in their investigation of the crime.' [Citations.]" *Pitchess* v. *Superior Court* (1974) 11 Cal.3d 531, 536-537 [113 Cal.Rptr. 897, 522 P.2d 305]; see also

*Griffin* v. *Municipal Court* (1977) 20 Cal.3d 300, 306 [142 Cal.Rptr. 286, 571 P.2d 997]; *Arcelona* v. *Municipal Court* (1980) 113 Cal.App. 3d 523, 528-529 [169 Cal.Rptr. 877].) Unless there is some reason that information be kept confidential for the purposes of effective law enforcement, the state has no interest in denying a defendant access to all evidence that can throw light on issues in the case. (*People* v. *Municipal Court* (*Street*) (1979) 89 Cal.App.3d 739, 749 [153 Cal.Rptr. 69].)

It is clear that discriminatory enforcement of the laws may be a valid defense in a case in which the defendant can establish deliberate invidious discrimination by prosecutorial authorities. (*Griffin* v. *Municipal Court, supra*, 20 Cal.3d 300, 306, *Murgia* v. *Municipal Court* (1975) 15 Cal.3d 286, 290 [124 Cal.Rptr. 204, 540 P.2d 44].) Thus, in criminal cases defendants may pursue discovery with respect to a claim that such prejudice was the moving force behind the proceedings. (*Griffin* v. *Municipal Court, supra*, 20 Cal.App.3d at p. 302; *Murgia* v. *Municipal Court, supra*, 15 Cal.3d at p. 291; *People* v. *Municipal Court* (*Street*), *supra*, 89 Cal.App.3d at p. 745.)

In the present action petitioner does not assert that he has been intentionally singled out by the prosecuting authorities on an invidiously discriminatory basis. Rather, he argues that the statute under which he had been charged with special circumstances has not been applied to all individuals who fit within its terms. Relying on *Furman* v. *Georgia* (1972) 408 U.S. 238 [33 L.Ed.2d 346, 92 S.Ct. 2726] and *Gregg* v. *Georgia* (1976) 428 U.S. 153 [49 L.Ed.2d 859, 96 S.Ct. 2909], petitioner contends that because of the uniqueness of the death penalty, the latter cannot be imposed under sentencing procedures that are applied in an arbitrary and capricious manner. Consistent with that principle the state and its agents are not free to seek death for a capriciously selected random handful of defendants.

"While *Furman* did not hold that the infliction of the death penalty *per se* violates the Constitution's ban on cruel and unusual punishments, it did recognize that the penalty of death is different in kind from any other punishment imposed under our system of criminal justice. Because of the uniqueness of the death penalty, *Furman* held that it could not be imposed under sentencing procedures that created a substantial risk that it would be inflicted in an arbitrary and capricious manner.... [¶] *Furman* mandates that where discretion is afforded a sentencing body on a matter so grave as the determination of whether a

human life should be taken or spared, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." (*Gregg* v. *Georgia, supra,* 428 U.S. at pp. 188-189 [49 L.Ed.2d at p. 883]; see also, *People* v. *Frierson* (1979) 25 Cal.3d 142, 173-174 [158 Cal.Rptr. 281, 599 P.2d 587].) Thus, *Furman* held that, "in order to minimize the risk that the death penalty would be imposed on a capriciously selected group of offenders, the *decision to impose it had to be guided by standards* so that the sentencing authority would focus on the particularized circumstances of the crime and the defendant." (*Gregg* v. *Georgia, supra,* 428 U.S. at p. 199 [49 L.Ed.2d at p. 889], italics supplied; see also *Rockwell* v. *Superior Court* (1976) 18 Cal.3d 420, 430 [134 Cal.Rptr. 650, 556 P.2d 1101].)

In *Gregg,* the United States Supreme Court upheld the Georgia legislation enacted in response to *Furman.* The court discussed several features of the new legislation which eliminated *Furman* defects. One such provision was a statute charging the Georgia Supreme Court with "responsibility to determine not only whether the evidence supports the jury's determination as to special circumstances, but also whether the death penalty 'was imposed under the influence of passion, prejudice, or any other arbitrary factor,' and *to consider whether that penalty is excessive in comparison with penalties 'imposed in similar cases, considering both the crime and the defendant.'* (Ga. Code Ann. § 27-2537 (Supp. 1975).) *Provision [was] also made for compilation of the data necessary to the last decision,* and for preparation by the trial judge of a report regarding factors relevant . . . to any disproportionality in the sentence." (*Rockwell* v. *Superior Court, supra,* 18 Cal.3d at p. 432, italics supplied.)

It is obvious from *Furman* and *Gregg* that clear and objective standards are constitutionally mandated from the time a jury considers the imposition of the death penalty through the time an appellate tribunal reviews the jury's decision. As my colleagues note, the *Gregg* court found that prosecutorial discretion was not determinative of the issues before the court. (*Gregg* v. *Georgia, supra,* 428 U.S. at p. 199 [49 L.Ed.2d at p. 889].) The majority opinion then quotes Justice White who stated in part: "*Absent facts to the contrary,* it cannot be assumed that prosecutors will be motivated in their charging decision by factors other than the strength of their case and the likelihood that a jury would impose the death penalty if it convicts." (Italics supplied.) Implicit in this statement is the realization that prosecutorial discretion may be abused if a defendant can show that a prosecutor is exercising

his discretion in an arbitrary and capricious manner. In the instant case petitioner is alleging and, if granted the requested discovery order, possibly will produce evidence of improper procedures by the district attorney.

In *Murgia* the People took the position that, whatever the merits of defendant's charges, discovery should be denied since discriminatory enforcement could never constitute a basis for dismissing a criminal action. In rejecting his contention our Supreme Court stated that "a criminal defendant may object, in the course of a criminal proceeding to the maintenance of the prosecution on the ground of deliberate invidious discrimination in the enforcement of the law." (15 Cal.3d at p. 300.) I see no plausible reason for not applying this same standard for the prosecutor's arbitrary charging of special circumstances. Accordingly, evidence of arbitrary and capricious charging of special circumstances by the prosecution may constitute a valid defense in the same way that discriminatory enforcement of the law may be a valid defense in a case in which the defendant establishes deliberate invidious discrimination by prosecutorial authorities.

In petitioner's motion to compel discovery of the San Francisco District Attorney's records regarding policy and procedures in charging special circumstances petitioner's counsel declared that in six and a half years as a criminal attorney he had never heard of any formal or informal standards applicable to the prosecution's decision of whether or not to seek the death penalty and to the best of his knowledge no such standards exist. Additionally, he declared that there was at least one case prosecuted by the San Francisco District Attorney's office in which defendants were charged with similar crimes to those charged against petitioner but in which no allegations of special circumstances were made. Such averments are sufficient for a prima facie showing of a standardless procedure in charging special circumstances. While at the pretrial stage one cannot determine what evidence petitioner will proffer in support of his claim, traditional principles of criminal discovery require that petitioner be permitted to discover information relevant to his claim.

I also disagree with the majority's position regarding the release of physical evidence for defense expert testing. While it first claims that petitioner's right to *independently* test evidence is undisputed, it then supports the trial court's order limiting that right.

Only one California case appears to deal with the issue at bench. In *People* v. *De La Plane* (1979) 88 Cal.App.3d 223 [151 Cal.Rptr. 843], the trial court denied defendant's motion to have samples of hair that were analyzed by Los Angeles Police Department experts sent to an independent laboratory in Oakland but indicated that defendant would be permitted to find a local expert to make an examination and analysis. On appeal, defendant argued that the denial of his motion constituted a denial of his due process rights to a fair trial. The appellate court found no error since defendant had made no showing before the trial court that he was unable to locate an expert in the Los Angeles area. Clearly, the court did not prohibit confidential, independent testing of the evidence.

In the instant case petitioner's counsel declared that in another criminal action prosecuted by the San Francisco District Attorney evidence seized by the San Francisco police was released for examination and analysis to an independent forensic scientist retained by the defense. This allegation suggests that petitioner is receiving disparate treatment. Counsel stated his willingness to stipulate that should physical evidence be released to the custody of any of his defense criminalists he would not raise any objection concerning the chain of custody of the evidence. Additionally, he stated he would stipulate that a protective order be issued by the court and agreed to waive any objection regarding the admissibility of prosecution testimony concerning such evidence should the evidence suffer material damage or be lost while in the custody of defense expert.

Given the defense's offered stipulations, I cannot see that the prosecutor's interest in protecting and preserving the integrity of the evidence outweighs defendant's interest in conducting an independent analysis. Real party suggests that petitioner's proposed lack of objection to expert testimony should the evidence be lost or destroyed cannot replace the importance of physical evidence at trial. I think not. Bullets, guns and fingerprints, unaccompanied by expert testimony, have little meaning to jurors. Despite real party's contrary arguments, petitioner would be bound by said stipulation and since the release of evidence is to petitioner's advantage he could not later claim incompetence of counsel.

At the very least, that portion of the trial court's order which provides that "the prosecution may monitor said inspections" constitutes a violation of petitioner's privilege against self-incrimination on state con-

stitutional grounds (Cal..Const., art. I, § 15).[1] Our Supreme Court has repeatedly proscribed compelled defense disclosures that "conceivably might lighten the prosecution's burden of proving its case in chief." (*Allen* v. *Superior Court* (1976) 18 Cal.3d 520, 525 [134 Cal.Rptr. 774, 557 P.2d 65]; *Prudhomme* v. *Superior Court* (1970) 2 Cal.3d 320, 326 [85 Cal.Rptr. 129, 466 P.2d 673].) If, as in *Allen* and *Prudhomme*, the prosecution is prohibited from discovering the names of defense witnesses prior to trial, certainly it may not discover the type of testing performed on and results of the defense experts' examination of evidence. Contrary to the majority view, it is not within the trial court's discretion to make an unconstitutional discovery order. Thus, a petition for extraordinary relief is proper where, as here, petitioner asserts that a lower court's order violates a privilege. (*Sav-On Drugs, Inc.* v. *Superior Court* (1975) 15 Cal.3d 1, 5 [123 Cal.Rptr. 283, 538 P.2d 739].)

In light of the foregoing I would grant petitioner's motion for release of physical evidence for independent, confidential testing or, at minimum, strike that portion of the trial court's order that authorizes prosecution monitoring of defense expert inspections.

A petition for a rehearing was denied November 18, 1981. Miller, J., was of the opinion that the petition should be granted. Petitioner's application for a hearing by the Supreme Court was denied February 3, 1982. Bird, C. J., was of the opinion that the application should be granted.

---

[1] Article I, section 15 provides in pertinent part: "... Persons may not ... be compelled in a criminal cause to be a witness against themselves...."