[Crim. No. 17083. Fourth Dist., Div. Three. Oct. 25, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
SKIP WILLIAM WHITE, Defendant and Appellant.

**Counsel**

Adelbert Clifford Haws, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, John

W. Carney and Robert M. Foster, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

SONENSHINE, J.—Defendant Skip William White was convicted of second degree murder (Pen. Code, § 187).[1] We must decide whether court ordered monitoring of his conversations with jailhouse visitors compels dismissal of the prosecution. We conclude it does not and affirm.

I

White knew the victim, Joseph N. Flores, and had developed a strong dislike for him. After a chance meeting at a bar one evening, White and Flores suddenly left together in Flores' car. Shortly thereafter White killed Flores. He then had two friends take Flores and the car to a remote location where they burned the car with the body in the trunk.

While White was in custody in the Fresno County jail awaiting trial,[2] the authorities learned some of the witnesses in the case had received death threats. A prosecutor and the homicide investigator prepared a declaration reciting facts demonstrating a danger to the witnesses and presented it to a judge. She issued an order permitting the monitoring of, inter alia, White's telephone calls and visitor conversations but specifically prohibiting any monitoring of communications between White and his attorney.[3] A number of conversations were monitored and taped.[4]

---

[1]All statutory references are to the Penal Code unless otherwise stated.

[2]The crime occurred in Fresno County. A motion for change of venue was granted and the case was transferred to Orange County.

[3]The body of the order reads: "The court having read the declaration in support of the motion requesting the monitoring of mail, visitor conversations, and telephone calls, and good cause appearing, THE COURT HEREBY ORDERS that the members of the Fresno County Jail and Fresno County Sheriff's Office, may in the course of the investigation and for security purposes, monitor and read outgoing and incoming mail by or from the defendants Skip William White and Russell Lee Pisor, conversations with their visitors and their telephone conversations within the Fresno County Jail. [¶] This order does not include the monitoring of any conversations between Skip William White or Russell Lee Pisor with their respective attorneys. Such monitoring is specifically prohibited."

[4]Prisoners and nonattorney visitors communicate only by a telephone system. The attorney visiting area is in another part of the jail where full contact is permitted. The conversations taped involved only visitors and were unrelated to White's legal representation. We note such wiretapping or eavesdropping in correctional facilities is specifically exempted from the Penal Code provisions restricting invasions of privacy. (§§ 631, subd. (b)(3); 632, subd. (e)(3).)

II

On appeal White contends the trial court erred when it denied his nonstatutory motion to dismiss because of the jailhouse monitoring. He makes three arguments in support of this contention. First, he argues the order violates the principles enunciated in *Prudhomme v. Superior Court* (1970) 2 Cal.3d 320 [85 Cal.Rptr. 129, 466 P.2d 673]. In that case, the Supreme Court restrained a trial court from enforcing a discovery order compelling a defendant's attorney to disclose to the prosecution the names, addresses, and expected testimony of the witnesses the defendant intended to call at trial. The court said the Fifth Amendment privilege against self-incrimination forbade such an order. Only production of information which could not possibly have a tendency to incriminate the defendant may be compelled by the court at the request of the prosecution. (See also *People v. Collie* (1981) 30 Cal.3d 43 [177 Cal.Rptr. 458, 634 P.2d 534, 23 A.L.R.4th 776]; *People v. Barr* (1984) 159 Cal.App.3d 1129 [206 Cal.Rptr. 331].)

■ But *Prudhomme* and its progeny apply only to judicial *discovery orders* in favor of the prosecution *specifically designed* to provide the prosecution with information it can use to prepare for trial. These cases do not impose a blanket prohibition on every prosecutorial activity which may produce incriminating evidence. The order here was designed to protect witnesses; discovery of evidence was not its purpose. Since *Prudhomme* discusses an entirely different type of court order, its citation in the present context is unpersuasive.

It may be White is attempting to analogize the present case to *Prudhomme* by implying the prosecution might have discovered evidence on the tapes which aided in White's prosecution. This argument fails because White has not demonstrated a single instance of prosecutorial exploitation of matters on the tape.[5] He has not shown the tapes contained any evidence or evidentiary leads the prosecution could conceivably have used. The record does not demonstrate any prosecution discovery, permissible or not, occurred as a result of the court order. (See *People v. Fulton* (1984) 155 Cal.App.3d 91 [201 Cal.Rptr. 879].)[6]

In addition, the trial court's ruling on the motion to dismiss protected White by reserving for him the ability to move for the suppression of the tapes during the trial if the prosecution sought to use any of them. White did not avail himself of this option. In fact, both White and the prosecution

---

[5]White presented no evidence regarding the content of the taped conversations in support of his motion to dismiss.

[6]This conclusion is buttressed, in part, by the fact the prosecution made no use of the tapes in its case in chief.

made use of the tapes during the defense phase of the case. White did not object to their use nor did he seek to suppress any of the tapes. This treatment of the tapes severely undercuts any suggestion they prejudiced White's case by easing the prosecution's evidentiary burden.

Second, White argues the taping violated his right to privacy enunciated in article I, section 1 of the California Constitution.[7] (See *White* v. *Davis* (1975) 13 Cal.3d 757 [120 Cal.Rptr. 94, 533 P.2d 222].) But, "there is cogent authority for the proposition that jailhouse monitoring does not infringe the privacy rights specified by the California Constitution. [Citations.]" (*People* v. *Dominguez* (1981) 121 Cal.App.3d 481, 505 [175 Cal.Rptr. 445].) "A long line of cases has established that there is no reasonable expectation of privacy in ordinary jailhouse conversations [citations] unless an attorney consults with the defendant in a room designed for that purpose [citation], or unless a defendant is lulled into believing that his jailhouse conversations will be private [citations]." (*Ibid.*; see also *North* v. *Superior Court* (1972) 8 Cal.3d 301 [104 Cal.Rptr. 833, 502 P.2d 1305, 57 A.L.R.3d 155]; *People* v. *Owens* (1980) 112 Cal.App.3d 441, 447-449 [169 Cal.Rptr. 359].)[8] We decline to depart from this body of authority and refuse to recognize a right to privacy in jailhouse conversations emanating from article I, section 1 of the California Constitution.[9]

Finally, White relies on *DeLancie* v. *Superior Court* (1982) 31 Cal.3d 865 [183 Cal.Rptr. 866, 647 P.2d 142], and its analysis of sections 2600 and 2601.[10] *DeLancie* was an individual and class action against a county

[7]That section reads: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing and protecting property, and pursuing and obtaining safety, happiness and privacy."

[8]This line of cases also inferentially undermines White's first contention jailhouse monitoring is prosecution discovery within the meaning of *Prudhomme*.

[9]Although we do not rely on these cases in reaching our decision, we note the United States Supreme Court has recently decided two cases which evince a very restrictive view on the privacy rights of prisoners. (*Block* v. *Rutherford* (1984) — U.S. — [82 L.Ed.2d 438, 104 S.Ct. 3227]; *Hudson* v. *Palmer* (1984) — U.S. — [82 L.Ed.2d 393, 104 S.Ct. 3194].)

[10]Section 2600 states: "A person sentenced to imprisonment in a state prison may, during any such period of confinement, be deprived of such rights, and only such rights, as is necessary in order to provide for the reasonable security of the institution in which he is confined and for the reasonable protection of the public."

Section 2601 states: "Notwithstanding any other provision of law, each such person shall have the following civil rights: [¶] (a) To inherit, own, sell, or convey real or personal property, including all written and artistic material produced or created by such person during the period of imprisonment; provided that, to the extent authorized in Section 2600, the Department of Corrections may restrict or prohibit sales or conveyances that are made for business purposes. [¶] (b) To correspond, confidentially, with any member of the State Bar or holder of public office, provided that the prison authorities may open and inspect incoming mail to search for contraband. [¶] (c) To purchase, receive, read, and permit other inmates to read any and all legal materials, newspapers, periodicals, and books accepted for distribution by the United States Post Office, except those which describe the making of any weapon, explosive, poison or destructive device. Nothing in this section shall be construed

sheriff and other county officials attacking surveillance practices in a county jail. It alleged jail officials routinely monitored conversations not for institutional security or protection of the public, but to gather evidence for use in criminal trials. The trial court sustained a demurrer without leave to amend, but the Supreme Court reversed, concluding the plaintiffs had stated a cause of action under sections 2600 and 2601.

*DeLancie* is of no aid to White, however. The monitoring in the present case began in October 1981 and ended in June 1982. *DeLancie* was filed on July 8, 1982. In *Donaldson* v. *Superior Court* (1983) 35 Cal.3d 24 [196 Cal.Rptr. 704, 672 P.2d 110], the court held *DeLancie* is not retroactive. (*Id.*, at pp. 38-39.) *DeLancie* does not compel a sanction for monitoring which occurred before that case was decided. (*Ibid.*)

Moreover, we seriously question whether, even if *DeLancie* were retroactive, its principles would condemn the monitoring in the instant case. The court in *DeLancie* emphasized it was addressing the narrow question of jailhouse monitoring ". . . for the purpose of discovering evidence for use in criminal trials, rather than for the purpose of institutional security or public protection . . . ." (*Id.*, at pp. 867-868.) Here, on the other hand, the prosecution and the sheriff's department were concerned with public protection, to wit, the investigation of threats to murder prosecution witnesses. *DeLancie* does not address monitoring under such circumstances.

Nor is it insignificant that the authorities sought judicial approval prior to monitoring. Pretrial detainees in a jail do not have a reasonable expectation of privacy regarding conversations unconnected with their legal representation. (*North* v. *Superior Court, supra,* 8 Cal.3d 301, 312; *People* v. *Dominguez, supra,* 121 Cal.App.3d 481, 504-505; *People* v. *Williams* (1982) 128 Cal.App.3d 981, 985-986 [180 Cal.Rptr. 734].) Arguably, White's conversations could have been monitored and taped without prior judicial authorization. Nonetheless, the authorities in this case sought and were granted a court order, upon a showing of cause, permitting the monitor-

---

as limiting the right of prison authorities (1) to open and inspect any and all packages received by an inmate and (2) to establish reasonable restrictions as to the number of newspapers, magazines, and books that the inmate may have in his cell or elsewhere in the prison at one time. [¶] (d) To have personal visits; provided that the department may provide such restrictions as are necessary for the reasonable security of the institution. [¶] (e) To initiate civil actions. [¶] (f) To marry. [¶] (g) To create a power of appointment. [¶] (h) To make a will. [¶] (i) To receive all benefits provided for in Sections 3370 and 3371 of the Labor Code and in Section 5069 of this code."

*DeLancie* holds these sections also apply to those incarcerated in county jails on equal protection grounds. (*Id.*, at p. 872.)

ing.[11] In a search warrant context, it has been said "[a] grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting." (*United States* v. *Ventresca* (1965) 380 U.S. 102, 108 [13 L.Ed.2d 684, 689, 85 S.Ct. 741].) That same concern applies here as well. White urges no court order can ever issue permitting jailhouse monitoring. Were we to so hold, we would discourage custodial officials and law enforcement officers from seeking prior judicial approval. In our view, the procedure of seeking a court order followed in the present case is to be commended and encouraged rather than stifled.

In summary, none of White's arguments convinces us court ordered jailhouse monitoring is impermissible. ■ ■■■ ■ That being the case, White has not demonstrated the trial court erred in denying his motion to dismiss on this ground.[12]

■ We also note another difficulty with White's position: he sought a remedy, dismissal, to which he was entitled only in the most limited circumstances not applicable here. The remedy for any improper surveillance is suppression of the evidence of the conversations. (*Massiah* v. *United States* (1964) 377 U.S. 201, 206-207 [12 L.Ed.2d 246, 250-251, 84 S.Ct. 1199]; *In re Pratt* (1980) 112 Cal.App.3d 795, 852-862 [170 Cal.Rptr. 80].) Interference with the attorney-client relationship *may* entitle a defendant to a dismissal (see *Barber* v. *Municipal Court* (1979) 24 Cal.3d 742, 756-759 [157 Cal.Rptr. 658, 598 P.2d 818]; cf. *People* v. *Fulton, supra,* 155 Cal.App.3d 91), but White never even attempted to demonstrate any attorney or legal conversations were taped in violation of the court order.

■ Finally, the trial record undercuts White's position even further. The trial court specifically left open the option of White moving to suppress any or all of the tapes and conversations themselves. As previously noted,

---

[11]On appeal White does not argue the showing in support of the order was inadequate. Rather, he urges such an order cannot issue *at all.* For that reason we need not recite the details of the showing. The declaration recited both overt threats and more subtle forms of intimidation directed toward witnesses and their relatives. Details concerning White, his background and associates were also related. The facts disclosed support a legitimate cause for concern reflected by the issuance of the order permitting monitoring and taping.

[12]White also urges his motion to dismiss should have been granted because jail officials permitted the news media to interview White without his attorney present while he was in jail. The argument fails perforce because nothing in the record demonstrates the news media were acting in any respect as government agents. (See *People* v. *MacPherson* (1970) 2 Cal.3d 109, 116 [84 Cal.Rptr. 129, 465 P.2d 17].) During trial an extensive hearing was held at which White sought to suppress his statements to the news media. The trial court found these statements were not the product of any government conduct. White has failed to demonstrate the trial court erred in this finding. (Cf. *People* v. *Whitt* (1984) 36 Cal.3d 724, 736-744 [205 Cal.Rptr. 810, 685 P.2d 1161].)

the prosecution never sought to use the tapes in its case in chief and during the defense phase of the case the tapes were used by both sides without objection from White. He does not now complain about this use of the tapes, and indeed he could not, given his failure to object and his own use of the tapes at trial. (See *People* v. *Fonville* (1973) 35 Cal.App.3d 693, 707 [111 Cal.Rptr. 53].) This use of the tapes reinforces our conclusion the trial court's denial of White's motion to dismiss was correct.

The judgment is affirmed.

Wallin, Acting P. J., and Crosby, J., concurred.