[No. S004717, Crim. No. 25505. Dec. 31, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
FREDDIE LEE TAYLOR, Defendant and Appellant.

**COUNSEL**

George L. Schraer, under appointment by the Supreme Court, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Dane R. Gillette and Ann K. Jensen, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**PANELLI, J.**—Defendant Freddie Lee Taylor was convicted of the first degree murder of Carmen Carlos Vasquez (Pen. Code, § 187),[1] robbery in an inhabited dwelling (§ 213.5), attempted rape (§§ 261, 664), and three counts of burglary (§ 459). Three prior conviction enhancements were found true: robbery, burglary, and battery with great bodily injury. Two special circumstances were found true: that the murder was committed while defendant was engaged in the commission or attempted commission of robbery (§ 190.2, subd. (a)(17)(i)) and burglary (§ 190.2, subd. (a)(17)(vii)). A special circumstance allegation that the murder was committed while defendant was engaged in the commission or attempted commission of attempted rape (§ 190.2, subd. (a)(17)(iii)) was found not true. The jury fixed the penalty at death; this appeal is automatic. (Cal. Const., art VI, § 11; Pen. Code, § 1239, subd. (b).)

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

## Guilt Phase Facts

*Prosecution Case*

Mrs. Carmen Carlos Vasquez, an 84-year-old widow, lived alone in Richmond. Her son, Edward Vasquez, stopped by to visit his mother the afternoon of January 22, 1985, and noticed that his key "worked funny," as if the door were unlocked. His mother always kept the doors locked; her children all had keys to let themselves in. When he entered, Mr. Vasquez saw his mother's body on the floor. He called the police, reporting that she appeared dead. Mrs. Vasquez's underpants were torn, exposing her vagina. The genital area was swollen and bruised, and there were small areas of hemorrhage in the vaginal wall. While the injuries and the condition of the victim's panties were consistent with rape, a rape kit collected at the scene revealed no semen, sperm, acid phosphatase, or foreign pubic hair. Mrs. Vasquez had been beaten about the head and neck, fracturing many facial and nasal bones. There were between five and nine separate blows to the head. Nine ribs were fractured. The cause of death was traumatic head and neck injuries.

The intruder had entered through the back door, breaking the glass in the door. Defendant's palm print was found on a piece of glass on the floor near the back door. The print appeared to have been placed there after the glass had been broken. Defendant's fingerprints were found on the inside latch of the screen door, which had been opened by cutting a hole in the screen and reaching inside to unlatch the door. Defendant's fingerprints were also found on the doorjamb between the kitchen and living room. The parties stipulated that at the time of the crime defendant owned a pair of shoes within the class of shoes that could have left the shoe print lifted from a piece of glass by the back door. Another shoe print was found in the house, but it came from a different shoe than the print left on the glass.

A television set and a telephone were missing from the victim's house.

Defendant's grandmother lived across the street from the victim. Defendant had stayed with his grandmother off and on. The last time defendant visited her was the evening before the victim's body was found.

*Defense Case*

The defense presented no evidence, choosing to rest on the state of the evidence and argue that the prosecution had not met its burden of proving guilt beyond a reasonable doubt. The defense argued that, based on the fact that certain fingerprints and a footprint which had been found in the

victim's home had not been identified, it was possible that someone else was in the house with defendant and killed the victim.

### GUILT PHASE CONTENTIONS

1. *Photographs of Victim While Alive*

The prosecution presented three photographs of the victim while alive for her son to identify. Defense counsel objected on the ground that one was sufficient and that the two that depicted children with the victim should not be allowed. After the victim's daughter identified the photographs, the court admitted them into evidence over defense objection that two of them were cumulative.

■ Defendant contends that his trial counsel rendered ineffective assistance in failing to object to the admission of·all of the photographs on relevancy grounds pursuant to *People* v. *Ramos* (1982) 30 Cal.3d 553, 577-578 [180 Cal.Rptr. 266, 639 P.2d 908]. (See also *People* v. *Hendricks* (1987) 43 Cal.3d 584, 594 [238 Cal.Rptr. 66, 737 P.2d 1350]; *People* v. *Hovey* (1988) 44 Cal.3d 543, 571 [244 Cal.Rptr. 121, 749 P.2d 776]; *People* v. *Kimble* (1988) 44 Cal.3d 480, 499 [244 Cal.Rptr. 148, 749 P.2d 803].) ■ Defendant bears the burden of proving ineffectiveness of counsel. To establish entitlement to relief defendant must show (1) that trial counsel failed to act in the manner to be expected of reasonably competent attorneys acting as diligent advocates and (2) that it is reasonably probable that a more favorable determination would have resulted in the absence of counsel's failings. (*People* v. *Lewis* (1990) 50 Cal.3d 262, 288 [266 Cal.Rptr. 834, 786 P.2d 892].)

■ We need not decide whether counsel acted incompetently in failing to object to the admission of all of the photographs of the victim while alive because defendant would still be unable to show that counsel's deficiency resulted in prejudice—that is, that a more favorable determination was reasonably probable had those photographs not been admitted. The photographs were innocuous, and the evidence against defendant, though circumstantial, was extremely strong. Defendant's palm print was on a piece of glass from the broken door, and it had been placed there after the glass had been broken. Defendant's fingerprints were found on the inside latch of the screen door and on a doorjamb between the kitchen and living room. Defendant owned a pair of shoes that could have left the footprint on the broken glass from the back door. Finally, defendant's grandmother lived across the street from the victim, and defendant had often stayed with his grandmother. Defendant was at his grandmother's house the night before the victim's body was found.

Defendant claims the introduction of the photographs was prejudicial because this was a "close case." Defendant bases his claim primarily on the fact that the jury deliberated for at least 10 hours before reaching a verdict on the issue of guilt. He relies on cases in which jury deliberations of this length were said to have shown that the case was close (*People* v. *Cardenas* (1982) 31 Cal.3d 897 [184 Cal.Rptr. 165, 647 P.2d 569]; *People* v. *Rucker* (1980) 26 Cal.3d 368 [162 Cal.Rptr. 13, 605 P.2d 843]; *People* v. *Woodard* (1979) 23 Cal.3d 329 [152 Cal.Rptr. 536, 590 P.2d 391]; *People* v. *Collins* (1968) 68 Cal.2d 319 [66 Cal.Rptr. 497, 438 P.2d 33, 36 A.L.R.3d 1176]; *People* v. *Bennett* (1969) 276 Cal.App.2d 172 [80 Cal.Rptr. 706]), but none of these cases involved allegations of special circumstances carrying a potential penalty of death. Here, the jury had to determine the issue of guilt on four charges and the truth of three special circumstances. The length of the jury's deliberations cannot be said to be unduly significant in light of the gravity of its task.

We conclude that there is no reasonable probability of a more favorable result had the jury not seen and heard about the three photographs of the victim while alive. Thus we reject defendant's claim of ineffectiveness of counsel for failing to object to their admission into evidence.

2. *Aiding and Abetting Instruction*

At defendant's request the trial court instructed on the defense theories of aiding and abetting, unjoined perpetrators, and conspiracy. As relevant here, the court instructed pursuant to CALJIC No. 3.00 (1981 rev.): "One who aids and abets is not only guilty of the particular crime that to his knowledge his confederates are contemplating committing, but he is also liable for the natural and reasonable or probable consequences of any act that he knowingly aided or encouraged."

█ Defendant contends that the court should also have instructed the jury that it must determine the question of whether under the facts of the case an unplanned crime is a reasonable or probable consequence of the act the defendant knowingly aided. CALJIC No. 3.00 was revised in 1987 to include such a statement in response to a suggestion made in *People* v. *Hammond* (1986) 181 Cal.App.3d 463, 469 [226 Cal.Rptr. 475].

The People assert that defendant is barred from complaining because he failed to request that the instruction be so clarified. (See *People* v. *Anderson* (1966) 64 Cal.2d 633, 639 [51 Cal.Rptr. 238, 414 P.2d 366].) Defendant responds with citation to *People* v. *Jones* (1989) 207 Cal.App.3d 1090 [255 Cal.Rptr. 464], where the Court of Appeal found the omission of this clarification erroneous.

In this case, we need not decide whether defendant had a duty to request the clarification because it is clear that any error in failing to include this provision was harmless beyond a reasonable doubt. (See *People* v. *Dyer* (1988) 45 Cal.3d 26, 60-64 [246 Cal.Rptr. 209, 753 P.2d 1]; *People* v. *Adcox* (1988) 47 Cal.3d 207, 243-244 [253 Cal.Rptr. 55, 763 P.2d 906].) When the present case was tried *Carlos* v. *Superior Court* (1983) 35 Cal.3d 131 [197 Cal.Rptr. 79, 672 P.2d 862] was the governing law. *Carlos* required the jury to find that defendant intended to kill Mrs. Vasquez in order to find the special circumstances true. The jury was instructed that in order to find any of the special circumstances to be true it must find that "the defendant intended to kill a human being." In finding the robbery and burglary special circumstances true, the jury thus determined that defendant intended to kill when he engaged in the commission of burglary and robbery. Since the factual question posed by the omitted instruction was necessarily resolved adversely to defendant by the jury's finding of intent to kill, there can be no prejudice to defendant. (See *People* v. *Adcox, supra*, 47 Cal.3d at pp. 243-244.)

### PENALTY PHASE FACTS

*Prosecution Case*

At the penalty phase the People introduced documentary evidence showing that defendant had been convicted of five felonies: (1) an August 28, 1978, conviction for burglary in Oklahoma;[2] (2) a December 19, 1980, conviction for the robbery of Rosa Lott;[3] (3) a February 11, 1981, conviction for battery causing serious bodily injury;[4] (4) a conviction for the September 12, 1984, burglary of the home of Carmen Carlos Vasquez; and (5) a conviction for the November 24, 1984, burglary of the home of Willie Randle.[5]

The People introduced evidence of the circumstances surrounding two of the felony convictions (robbery of Rosa Lott and battery of Bobbie Holman) and evidence of three other offenses that were pending trial. Rosa Lott testified that defendant knocked her down and ran off with her purse as she was helping her wheelchair-bound daughter into her car in the Montgomery Ward parking lot in Richmond. Bobbie Holman testified that one night

---

[2] This conviction was the basis for one of the two prior-prison-term enhancements alleged in the information pursuant to section 667.5, subdivision (b).

[3] This robbery conviction was the basis for the habitual-criminal enhancement alleged in the information pursuant to section 667, subdivision (a).

[4] This conviction was the basis for one of the two prior-prison-term enhancements alleged in the information pursuant to section 667.5, subdivision (b).

[5] The last two offenses were charged in the information as counts 5 and 6; defendant pleaded guilty to them the day before the guilt phase of the trial began.

as she was walking home from the bus stop, defendant came up behind her and started punching her in the head. He hit her four or five times. Mrs. Holman stabbed defendant with a letter opener that she carried in her pocket for protection, and he ran off.

On January 26, 1985, defendant robbed Wen Koang Lin at gunpoint at J & M Liquors in San Pablo. The robbery was videotaped, and the videotape was played for the jury.[6]

On February 5, 1985, as Patricia Ann Coleman was walking down the street, defendant knocked her down, hit her in the face, and took money out of her pocket. Coleman got up and began walking home. Defendant followed and stabbed her in the stomach with a knife. Coleman knew defendant.[7]

On February 5, 1985, after the attack on Patricia Coleman, defendant assaulted Lance Kegler, who had come to the East Bay Builders store in Richmond in response to a call from an alarm company and found defendant in the building. Defendant hit Kegler in the eye, breaking his glasses. Defendant was caught by police as he was running from the scene.[8]

*Defense Case*

Defendant's mother testified that she had nine children, seven girls and two boys. Defendant was the product of her second marriage; her other son was 13 years older than defendant. Defendant, who was born in 1960, was four when she married her current husband, Lattemore Hill. Defendant had behavior problems when he was little and did not do well in school. His mother placed him in a boys' home for a few months when he was eight or nine.

Pauline Harris, one of defendant's sisters, testified that defendant was the only boy in the house. Mr. Hill treated him more harshly than the girls. Defendant was not allowed to associate with his sisters. Defendant was not allowed in the house during the day; he had to rush in and out if he was hungry or thirsty. Defendant had a cot in the family room; everyone else slept in bedrooms.

---

[6] This robbery had been charged as count 7 in the information; the court, however, granted defendant's motion to sever this count from the others.

[7] Defendant was charged with attempted murder and robbery based on this incident. The charges were pending against him in Contra Costa County Superior Court prior to the trial in this case.

[8] A burglary charge was pending against defendant in the same action as the Coleman charges which were pending in the Contra Costa County Superior Court when the instant trial began.

Veronica Tolliver, defendant's younger sister, testified that she would see defendant only at night. She testified that Mr. Hill sexually touched his stepdaughters and accused defendant of sexual misconduct with his sisters when defendant was only five or six. Mr. Hill beat defendant with an extension cord.

Peggy Ervin, one of defendant's sisters, testified that Mr. Hill approached her sexually several times and that she hated the way Hill treated defendant. She never saw Hill or her mother hug defendant as a child or an adult.

Linda Kay Nichols-Splawn, another of defendant's sisters, testified that Mr. Hill falsely accused defendant of sexually harassing her when defendant was four or five. That was the beginning of the rules which brought about defendant being segregated from the girls.

Curtis Tillotson testified that he lived next door to defendant while growing up and that he was like an older brother to defendant. They smoked and drank together, and he taught defendant how to burglarize. He also introduced defendant to paint sniffing. After Mr. Tillotson broke his neck in 1975 and became permanently bedridden, defendant would come over and take care of him. Defendant would give him showers, feed him, change his clothes and bandages, give him medicine and take him out.

Ted Stephens, a clinical psychologist at the Child Guidance Center in Lawton, Oklahoma, evaluated defendant in 1972 when defendant was 11. Defendant's mother was concerned about his behavior problems at home and at school. Stephens found that defendant had a normal IQ, but that he had a learning disability which is now called attention deficit disorder. Defendant saw things in reverse and had trouble making out sounds in the classroom. Defendant was impulsive, often taking advantage of an opportunity without thinking of the consequences. He was also oppositional; he disobeyed his mother and teacher. Stephens observed that learning disabilities can be a cause of behavior problems. Stephens met with defendant's mother and recommended play therapy and that he be enrolled in the learning lab at the Child Guidance Center. Stephens felt that defendant could have been helped, but his recommendations were not followed.

Nancy Prigmore testified that she was a forensic social worker at the Taliaferro Health Center in Lawton, Oklahoma in December 1984, when defendant was admitted on an emergency order of detention as a result of an altercation he had with a family member that was drug or alcohol related. Before arriving at the center, defendant had tried to hang himself in a jail cell. A treatment team evaluated defendant, thought he could benefit from more treatment, but did not recommend involuntary commitment

because defendant's family did not wish to pursue it. Defendant declined to commit himself voluntarily, but he did agree to outpatient treatment. Defendant was released within 72 hours of his commitment. He kept two outpatient appointments but did not keep his appointment scheduled for January 15, 1985.

Dr. Carolyn Block, a clinical psychologist, gave defendant a number of tests and diagnosed him as having a borderline personality disorder. People with this condition have problems with perceptual ability, unstable mood, behavioral problems and identity problems. These people can cross the border of sanity, but most of the time they are not psychotic.

Dr. Alexander Nemeth, a neuroclinical psychologist, examined defendant for brain disorders. He found defendant had mild brain damage. Dr. Nemeth diagnosed defendant as being severely emotionally disturbed. Near the end of the session defendant abruptly became uncooperative and angry, used profanity and refused to cooperate further. Dr. Nemeth found defendant to have a reduced tolerance to alcohol and other intoxicants. This condition is often caused by brain damage.

PENALTY PHASE CONTENTIONS

1. *Notice of Aggravating Evidence*

The People did not file their written notice of intent to present evidence in aggravation until after the guilt verdicts had been returned. The notice listed 11 offenses. Defendant objected to the notice, stating that "under 190.3, it was incumbent upon Mr. Johnson to provide notice of his intent to admit evidence about these cases before the trial began." The prosecutor responded by stating he thought that during pretrial discussions they had talked about evidence that might be presented during the penalty phase.

We have interpreted section 190.3 as requiring that notice be given before the guilt phase of the trial. (*Keenan* v. *Superior* (1981) 126 Cal.App.3d 576 [177 Cal.Rptr. 841]; *People* v. *Miranda* (1987) 44 Cal.3d 57, 96-97 [241 Cal.Rptr. 594, 744 P.2d 1127].) Section 190.3 provides in pertinent part: "Except for evidence in proof of the offense or special circumstances which subject a defendant to the death penalty, no evidence may be presented by the prosecution in aggravation unless notice of the evidence to be introduced has been given to the defendant within a reasonable period of time as determined by the court, prior to trial." The purpose of the notice provision is to advise an accused of the evidence against him so that he may have a reasonable opportunity to prepare a defense at the penalty trial. (*People* v. *Miranda, supra,* 44 Cal.3d at p. 96.)

In addition to his general objection, defendant raised specific objections as to certain of the offenses listed. The trial court sustained some of defendant's objections and overruled the others. It struck the first offense listed on the ground that there had been no actual notice of it prior to trial. The People agreed to withdraw the fifth offense from the list after the defense asserted lack of notice in that this offense had not been charged against defendant. The court did not address the lack-of-timely notice claim as to the other offenses listed, apparently assuming that actual notice was sufficient.

■ It is undisputed that defendant had actual notice prior to trial of the aggravating evidence introduced by the prosecution. The aggravating evidence consisted of crimes charged in the information as prior convictions for enhancement purposes and crimes charged in a separate information that was pending in Contra Costa County Superior Court. Although the notice given did not comply with the dictates of section 190.3, defendant does not appear to have been prejudiced by the lack of official notice. Defendant did not claim surprise, nor did he request a continuance. The apparent intent underlying the notice provision "is to afford capital defendants notice of the evidence actually to be used at the penalty phase without the necessity of resort to the discovery procedures utilized to obtain information about the evidence on which the prosecution may rely to establish guilt . . . ." (*People* v. *Jennings* (1988) 46 Cal.3d 963, 987 [251 Cal. Rptr. 278, 760 P.2d 475].) That purpose was served here despite the technical violation of section 190.3. Accordingly, we conclude that any failings regarding notice were not prejudicial under the reasonable-possibility test.[9] (See *People* v. *Wright, ante*, p. 367 [276 Cal.Rptr. 731, 802 P.2d 221] ; *People* v. *Brown* (1988) 46 Cal.3d 432, 448 [250 Cal.Rptr. 604, 758 P.2d 1135].)

### 2. *Request for Additional Voir Dire of Jury*

Defendant moved to impanel a new jury for the penalty phase on the ground that the jury, having heard no defense offered at the guilt phase, would question defense counsel's credibility when evidence of defendant's mental condition was presented at the penalty phase. The trial court denied the motion, noting that section 190.4, subdivision (c) mandates the same jury in both phases of the trial unless good cause is shown.

Defense counsel then requested to voir dire the jury to determine the openness of their minds. The court denied the request, finding nothing in section 1089 or case law that suggested additional voir dire into potential

---

[9] Since we have found that trial counsel did object generally to the timeliness of the notice, we need not address defendant's alternative argument that if counsel had not made an adequate objection, his failure constituted ineffectiveness of counsel.

challenges for cause should be permitted after the jury was sworn. The court indicated, however, that it would permit comment during defense counsel's opening statement.

Section 190.4, subdivision (c) states in relevant part: "If the trier of fact which convicted the defendant of a crime for which he may be subject to the death penalty was a jury, the same jury shall consider . . . the penalty to be applied, unless for good cause shown the court discharges that jury in which case a new jury shall be drawn."

■ The policy favoring a single jury to determine both guilt and penalty is well established. (See, e.g., *People* v. *Ainsworth* (1988) 45 Cal.3d 984, 1028-1029 [248 Cal.Rptr. 568, 755 P.2d 1017]; *People* v. *Fields* (1983) 35 Cal.3d 329, 351-352 [197 Cal.Rptr. 803, 673 P.2d 680].) We have rejected arguments for re-voir dire of the jury before the penalty phase in a number of cases. (*People* v. *Malone* (1988) 47 Cal.3d 1, 27-28 [252 Cal.Rptr. 525, 762 P.2d 1249]; *People* v. *Ainsworth, supra,* 45 Cal.3d at pp. 1028-1029; *People* v. *Melton* (1988) 44 Cal.3d 713, 748-750 [244 Cal.Rptr. 867, 750 P.2d 741]; *People* v. *Gates* (1987) 43 Cal.3d 1168, 1198-1199 [240 Cal.Rptr. 666, 743 P.2d 301].) ■ Although none of these cases involved the precise argument now presented, the present argument shares the same flaw as those previously advanced—namely, lack of anything more than speculation supporting the assertion of need for the re-voir dire. For example, counsel in *Ainsworth* "could point to no facts furnishing good cause [for re-voir dire], other than speculation that the sitting jury, having found defendant guilty of the charges against him, could no longer be impartial." (*People* v. *Ainsworth, supra,* 45 Cal.3d at p. 1029.) Likewise, in *Malone,* "defendant's assertions of possible juror bias . . . , based on the inflammatory nature of the guilt phase evidence and the promptness of the verdict, were insufficient to impose any duty of inquiry on the court." (*People* v. *Malone, supra,* 47 Cal.3d at p. 28.)

Despite defendant's assertions to the contrary, the situation here is not significantly different from those at issue in the prior cases, particularly *Malone.* For the reasons given in the prior cases, the trial court did not err in denying defendant's request to re-voir dire the jury. If defendant's argument were accepted, the trial court would be required to permit re-voir dire of the jury in every case in which there was any deviation between the defense strategy at the guilt phase and that contemplated at the penalty phase. This clearly is not the intent of section 190.4, subdivision (c).

### 3. *Dr. Block's Testimony*

Dr. Block testified that for there to be a diagnosis of borderline personality disorder, the patient must exhibit five of eight specified current

and long-term functioning characteristics and that defendant exhibited seven of the eight characteristics. After indicating that she had either reviewed or been given a summary of the police reports and was aware of the victim's head and vaginal injuries, defense counsel asked Dr. Block a question in the abstract: "Now, could you explain how it is possible to commit acts which result in death and those kinds of injuries and not at the same time have a mental intent to kill? How is that possible, and if it is, how is it possible?" Dr. Block began to answer, "Yes, it's possible. People can often, due to various—" At that point the prosecution objected that the question called for speculation and that the possibilities were countless and were irrelevant to the facts of the case.

After argument outside the presence of the jury the court sustained the objection on the ground that the question was in the abstract and thus was irrelevant. Defense counsel apparently did not want to direct the question specifically to defendant's mental state in an effort to avoid allowing the prosecutor to ask about statements defendant had made to Dr. Block concerning his intent.

Defendant asserts that the question should have been allowed because it was a precursor to asking whether someone with a borderline personality disorder could commit such an act without harboring an intent to kill. Defendant did not, however, make this argument in the trial court, probably for the same reason that he was unwilling to be more specific in his question—fear of broadening the scope of cross-examination to include the subject of his statements to Dr. Block regarding intent.

We find no abuse of discretion in the trial court's ruling. (See *People* v. *Gordon* (1990) 50 Cal.3d 1223, 1239 [270 Cal.Rptr. 451, 792 P.2d 251].) The question as posed was too abstract to be relevant to the question of defendant's mental condition or other factors listed in section 190.3. Moreover, even if the ruling had been erroneous, the error would be harmless beyond a reasonable doubt in light of the jury's special circumstance finding that defendant intended to kill Mrs. Vasquez.

### 4. *Erroneous Introduction of Two 1984 Burglaries*

Counts 5 and 6 of the information charged defendant, respectively, with burglarizing the home of Mrs. Vasquez on September 12 or 13, 1984, and burglarizing the home of Willie Randle on November 24, 1984. On the last day of hearings on pretrial motions in this case, on February 24, 1986, defendant pleaded guilty to these two burglary counts. Nevertheless, the People listed these burglary counts in the notice of aggravating evidence

and introduced into evidence a copy of the minute order of the plea proceedings.

At the conclusion of the penalty phase evidence and before instructing the jury, the court ruled that, in light of *People* v. *Balderas* (1985) 41 Cal.3d 144 [222 Cal.Rptr. 184, 711 P.2d 480], these convictions could not be considered as factors in aggravation. The court instructed the jury not to consider these convictions: "Specifically, you may not consider as an aggravating circumstance the burglary of Willie Randle on November 24, 1984, and the burglary of Carmen Carlos Vasquez on September 12-13, 1984."

■ Defendant contends his trial counsel rendered ineffective assistance in failing to object to the admission of these two burglaries. Defendant is correct in asserting that they were inadmissible under authority of *People* v. *Balderas, supra,* 41 Cal.3d at pages 201-203, which was decided three and a half months before the present penalty trial. In *Balderas,* we held that the prior felony convictions described in factor (c) of section 190.3 "are limited to those entered *before commission* of the capital crime." (41 Cal.3d at p. 201.) Thus, the burglaries at issue were not admissible as prior felony convictions. Since they did not involve violent criminal conduct, they did not qualify for admission pursuant to factor (b) of section 190.3 either.

Counsel's deficiency in failing to object is not enough to establish entitlement to relief for ineffectiveness of counsel. As previously mentioned, defendant must show both that counsel's performance was deficient and that a more favorable result was reasonably probable but for counsel's deficiency. (*People* v. *Lewis, supra,* 50 Cal.3d at p. 288.) Defendant is unable to make the latter showing.

It is not reasonably probable that the jury would have reached a more favorable result had these two burglaries never been mentioned. First, only documentary evidence was introduced regarding them. Second, the court specifically instructed the jury not to consider them. Third, the evidence concerning these burglaries was insignificant in comparison to the evidence properly admitted regarding defendant's violent criminal conduct and three prior felony convictions.

5. *Evidence of Defendant's Forcible Crimes*

■ Defendant contends the trial court erred when it permitted the prosecutor to introduce evidence of the circumstances and results of defendant's forcible crimes. We have decided to the contrary in *People* v. *Balderas, supra,* 41 Cal.3d at page 202; *People* v. *Gates, supra,* 43 Cal.3d 1168, 1203; *People* v. *Melton, supra,* 44 Cal.3d 713, 754; and *People* v. *Karis* (1988) 46

Cal.3d 612, 640-641 [250 Cal.Rptr. 659, 758 P.2d 1189]. Defendant's argument for reexamination of these cases is unpersuasive.

### 6. *Argument Regarding Victims' Terror*

During closing argument the prosecutor stated: "We spent time trying to describe the assaults and the attacks on Miss Vasquez, Miss Coleman, Holman, Holmes, Lott, but these are all words. [¶] I presented you with pictures, I tried to get witnesses to describe the terror, the feeling they had when that man decided, for whatever reason, to violate them, but they are just words, and Mr. Veale in a grand way asked you well, let's take off the mantle, let's show you Freddie Taylor."

██ Defendant contends that his trial counsel was ineffective for failing to object to the request that the jury focus on the victims' terror. He contends it was irrelevant to any aggravating factor listed in section 190.3 and that it was in violation of *Booth* v. *Maryland* (1987) 482 U.S. 496 [96 L.Ed.2d 440, 107 S.Ct. 2529]. We disagree. There was nothing improper about this argument. The principles set forth in *Booth* v. *Maryland, supra,* 482 U.S. 496, and *South Carolina* v. *Gathers* (1989) 490 U.S. 805 [104 L.Ed.2d 876, 109 S.Ct. 2207] "do not extend to evidence or argument concerning the nature and circumstances of the capital offense or the effect of that offense on the victim. The reason is plain: that information is uniquely relevant to the life-or-death decision and, as such, does not create a constitutionally unacceptable risk of arbitrary or capricious sentencing . . . . [Nor do] *Booth* and *Gathers* . . . extend to evidence or argument relating to the nature and circumstances of other criminal activity . . . or the effect of such criminal activity on the victims: in our view, that information is highly relevant to the life-or-death decision." (*People* v. *Benson, post,* 754 at p. 797 [276 Cal.Rptr. 827, 802 P.2d 330].)

### 7. *Instruction On Crimes Against Ms. Coleman*

Ms. Coleman had testified that defendant had approached her and demanded money on February 5, 1985. When she said she had no money, defendant grabbed her, knocked her down, hit her in the nose and eye, and took money out of her pocket. She got up and walked quickly toward her home. Defendant followed and stabbed her in the stomach.

In discussing the instructions to be given at the penalty phase, with reference to the Coleman incident, the prosecutor requested instructions on robbery, attempted murder, and assault with a deadly weapon. Assault with a deadly weapon was viewed as an alternative to attempted murder.

The court instructed the jury as follows:

"Evidence has been introduced for the purpose of showing that the defendant has committed the following alleged criminal activity, which involve the express or implied use of force or violence or the threat of force or violence.

"One, a robbery of Wen Koang Lin on January 26, 1985, two, a robbery and assault with a deadly weapon or by means of force likely to produce great bodily injury, and an attempted murder of Patricia Ann Coleman on February 5, 1985, three, a battery upon Lance Kegler on February 5, 1985."

■■■ Defendant argues that the court's instruction erroneously allowed the jury to view the Coleman episode as involving three crimes rather than two. We disagree. The instruction quoted above enumerated *three* incidents of *criminal activity* and thus it is difficult to conclude that the jury would have "inflated" the number of crimes. Moreover, even if we were to assume error in this regard, it was nonprejudicial. Coleman's testimony and description of the criminal acts was clear and unambiguous. We believe that this situation is similar to cases in which excessive multiple-murder special circumstances were alleged and found true by a jury. (See, e.g., *People* v. *Odle* (1988) 45 Cal.3d 386, 421-422 [247 Cal.Rptr. 137, 754 P.2d 184]; *People* v. *Allen* (1986) 42 Cal.3d 1222, 1281-1283 [232 Cal.Rptr. 849, 729 P.2d 115].) As in those cases there is no reasonable possibility that the arguably duplicate crimes affected the verdict since consideration of Coleman's testimony " 'did not permit consideration of any evidence that was not otherwise admissible and relevant to the penalty decision.' " (*People* v. *Odle, supra,* 45 Cal.3d at p. 422; *People* v. *Allen, supra,* 42 Cal.3d at p. 1281; see also *People* v. *Brown, supra,* 46 Cal.3d at p. 448.)

### 8. *Holman Assault*

Defendant had been charged with assault with intent to commit rape regarding Ms. Holman. He pleaded guilty, however, to the lesser offense of battery with serious bodily injury. At the penalty phase the prosecutor sought to introduce evidence to prove that the assault on Ms. Holman was with intent to commit rape. This evidence consisted of defendant's statement to a police officer that he had been stabbed by a prostitute whom he had kissed. Defendant objected to the evidence on grounds of relevance and Evidence Code section 352. The court overruled the objection.

■■■ Defendant contends the court erred in overruling his objection. He argues that the alleged intent to commit rape was irrelevant to section 190.3, factor (b), which focuses on the violence of criminal activity. He also

argues that his plea of guilty to a lesser included offense constituted an acquittal of the charged offense of assault with intent to commit rape and thus was inadmissible pursuant to section 190.3's prohibition against evidence of violent criminal activity for which the defendant was "prosecuted and acquitted."

We have previously rejected arguments such as the present one. In *People v. Melton, supra,* 44 Cal.3d at page 755, we rejected a contention that prior criminal activity that was the subject of a plea bargain should be inadmissible at a subsequent penalty trial. We stated there: "A bargained conviction or dismissal is not an 'acquittal' as described in section 190.3." (*Ibid.*) In *People v. Heishman* (1988) 45 Cal.3d 147, 192-193 [246 Cal.Rptr. 673, 753 P.2d 629], we held that the rule of *People v. Harvey* (1979) 25 Cal.3d 754 [159 Cal.Rptr. 696, 602 P.2d 396], prohibiting reliance on facts underlying a dismissed count to fix the sentence in the very case for which the plea bargain was executed, did not "preclude the use of such facts in the penalty phase of a later, separate trial for murder with special circumstances . . . ." (45 Cal.3d at p. 193.) In *People v. McDowell* (1988) 46 Cal.3d 551, 566-568 [250 Cal.Rptr. 530, 758 P.2d 1060], we rejected the defendant's argument that the dismissal of a charge of involuntary sexual battery and his plea of guilty to lewd, lascivious and indecent assault upon a child precluded introduction of the underlying facts of the case because his plea was to a nonviolent crime.

We are unpersuaded by defendant's attempt to distinguish his case from *Melton, Heishman,* and *McDowell.* For the reasons stated in those cases, we find no error in the trial court's ruling.

### 9. *Attempted Rape of Mrs. Vasquez*

The jury found defendant guilty of attempted rape of Mrs. Vasquez, but found the attempted rape special circumstance not true. Defendant contends that defense counsel was ineffective for failing to object to use of the attempted rape as an aggravating circumstance in light of the jury's finding the attempted rape special circumstance not true. Defense counsel did not object to this. Defendant contends that counsel's failure to object constituted ineffective assistance of counsel.

Defendant's contention fails. The evidence was properly admitted as a circumstance of the crime pursuant to section 190.3, factor (a). The fact that the jury found the special circumstance not true does not invalidate the guilt verdict returned on the attempted rape charge. The attempted rape was clearly encompassed within the authority to consider "the nature and circumstance of the present offense" under factor (a) of section 190.3.

### 10. *Defendant's Lack of Remorse*

During penalty phase argument the prosecutor stated that defense counsel had said he would show the jury "the real Freddie Taylor" through defendant's background, family and psychological condition. The prosecutor said that when the jurors ask themselves "who Freddie Taylor is," they should remember the robbery of a liquor store that took place four days after the death of Mrs. Vasquez. The prosecutor then stated: "Is there any showing, has there been any showing in this case of remorse or regret for what—" Defense counsel objected, and the court overruled the objection.

 Defendant contends the argument was improper for two reasons. First, it constituted an improper request to have the jury draw inferences against defendant because he exercised his constitutional right not to testify. (*Griffin* v. *California* (1965) 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229].) Second, remorse and regret do not relate to an aggravating factor listed in section 190.3.

Defendant's argument fails. As to the first reason, we rejected a similar argument in *People* v. *Miranda, supra*, 44 Cal.3d at pages 111-112, where we concluded that the prosecutor's argument was a proper comment on the record and did not call attention to defendant's failure to testify. As to the second reason, we rejected that argument in *People* v. *Dyer, supra*, 45 Cal.3d at pages 81-82, where we stated that under the 1978 death penalty law "the prosecutor should be entitled to observe that a particular mitigating circumstance, such as the defendant's remorse for his victims, is lacking from the case. [Citation.] Of course, the prosecutor is not permitted to argue that the absence of such mitigating factors is itself an *aggravating* factor justifying the death penalty (see *People* v. *Davenport* [(1985)] 41 Cal.3d 247, 288-290 [221 Cal.Rptr. 794, 710 P.2d 861])." (45 Cal.3d at p. 82; accord *People* v. *Odle, supra*, 45 Cal.3d at p. 422; *People* v. *Keenan* (1988) 46 Cal.3d 478, 510 [250 Cal.Rptr. 550, 758 P.2d 1081]; *People* v. *Walker* (1988) 47 Cal.3d 605, 650 [253 Cal.Rptr. 863, 765 P.2d 70].) We are not persuaded that we should reexamine these decisions.

Defendant also urges us to decide a constitutional question we declined to address in *People* v. *Keenan, supra*, 46 Cal.3d at page 510, footnote 14, where we said: "Because the record contained positive evidence of lack of remorse, of which defendant was well aware, and the jury was admonished not to speculate on evidence not in the record, there is no merit in his claim that his sentence was unconstitutional because rooted in unrebuttable, nonrecord inferences that he lacked remorse. (Citing *Booth* v. *Maryland* (1987) 482 U.S. 496, 506-507 [96 L.Ed.2d 440, 107 S.Ct. 2529]; *California* v. *Brown* (1987) 479 U.S. 538, 543 [93 L.Ed.2d 934, 107 S.Ct. 837]; *Elswick*

v. *Holland* (S.D.W.Va. 1985) 623 F.Supp. 498, 504.)" We again see no need to address this question. Defendant is mistaken in asserting there was no positive evidence of lack of remorse. The robbery four days after the murder was cited as showing lack of remorse.

11. *Instruction on Weighing Process*

The court gave a modified version of the 1986 revision of CALJIC No. 8.84.2 as follows: "It is now your duty to determine which of the two penalties, death or confinement in the state prison for life without possibility of parole, shall be imposed on the defendant. [¶] After having heard and considered the arguments of counsel, you shall consider, take into account and be guided by the applicable factors of aggravating and mitigating circumstances upon which you have been instructed. [¶] The weighing of aggravating and mitigating circumstances does not mean a mere mechanical counting of factors on each side of an imaginary scale, or the arbitrary assignment of weights to any of them. You are free to assign whatever moral or sympathetic value you deem appropriate to each and all of the various factors you are permitted to consider. In weighing the various circumstances you simply determine under the relevant evidence which penalty is justified and appropriate by considering the totality of the aggravating circumstances with the totality of the mitigating circumstances. To return a judgment of death, each of you must be persuaded that the aggravating circumstances are so substantial in comparison with the mitigating circumstances that it warrants [*sic*] death instead of life without parole. [¶] In order for the jury to impose either possible sentence, all twelve jurors must agree to that sentence. [¶] This means that before the jury can return a verdict of death, all twelve jurors must agree that the factors in aggravation outweigh the factors in mitigation. *Before the jury can return a verdict of confinement in the state prison for life without possibility of parole, all twelve jurors must agree that the factors in aggravation do not outweigh the factors in mitigation. . . .*"

 Defendant contends that the italicized portion of the instruction was erroneous because it did not tell the jurors that they could also return a verdict of life imprisonment without possibility of parole if they agreed that the factors in aggravation outweighed those in mitigation but found death was not the appropriate penalty under all the circumstances. His contention fails. In *People* v. *Boyde* (1988) 46 Cal.3d 212, 252-255 [250 Cal.Rptr. 83, 758 P.2d 25], we repudiated assertions that the "weighing" and "appropriateness" functions were separate and independent: "[T]he jury makes its appropriateness determination during its normative weighing process. Then, based upon its determination of the weight of mitigating factors relative to aggravating factors, it chooses the appropriate penalty—life

without possibility of parole if mitigating circumstances outweigh aggravating, or death if aggravating circumstances outweigh mitigating." (46 Cal.3d at p. 254.) Any doubt about the constitutionality of our interpretation was laid to rest by the United States Supreme Court in *Boyde* v. *California* (1990) 494 U.S. 370 [108 L.Ed.2d 316, 110 S.Ct. 1190].

Moreover, we note that defendant's contention is undermined by the fact that the court gave the following special instructions: "If the mitigating evidence gives rise to compassion or sympathy for the defendant, the jury may, based upon such sympathy or compassion alone, reject death as a penalty. [¶] A mitigating factor does not have be proved beyond a reasonable doubt to be considered. You may find that a mitigating factor exists if there is any substantial evidence to support it. [¶] Moreover, the law does not require that you find the existence of any mitigating factor before you choose life without the possibility of parole over death."

### 12. *Definition of "Factor in Mitigation"*

■ The court gave an instruction that defined "factor in mitigation" as follows: "A factor in mitigation is an act, circumstance or condition which involves an abatement or decreasing in seriousness or severity, one that reduces or makes lesser just [*sic*] a person's degree of culpability."[10]

Defendant contends that this definition is incorrect and too narrow. Defendant asserts that it refers only to the offense and does not relate to the defendant's background or character. If this had been the only instruction on the subject, defendant's point might have merit. Immediately before this instruction, however, the court instructed the jury it could consider "any sympathetic or other aspect of the defendant's character or record that the defendant offers as a basis for a sentence less than death, whether or not related to the offense for which he is on trial." The court further instructed the jury: "If the mitigating evidence gives rise to compassion or sympathy for the defendant, the jury may, based upon such sympathy or compassion alone, reject death as a penalty."

In view of the other instructions given, we do not think that there is a reasonable likelihood that the jurors interpreted the court's definition of "factor in mitigation" to prevent consideration of defendant's background and character. (See *Boyde* v. *California, supra,* 494 U.S. at p. __ [108 L.Ed.2d at p. 329].)

---

[10] The written version of the instruction states: ". . . one that reduces or makes less a person's degree of culpability."

### 13. *Photographs of Victim While Alive*

 Defendant renews his argument that defense counsel rendered ineffective assistance when he failed to object at the guilt phase to the admission of all three photographs of the victim taken while she was alive. We reject the contention for the reasons previously given. Any sympathy engendered by the introduction of the photos was de minimis when compared to that created by evidence of the viciousness of the actual assault upon the 84-year-old victim. (See *People* v. *Hovey, supra,* 44 Cal.3d at p. 576.)

There is no reasonable probability that the result would have been different at the penalty phase had the three photographs not been admitted at the guilt phase. (See *Strickland* v. *Washington* (1984) 466 U.S. 668, 695 [80 L.Ed.2d 674, 104 S.Ct. 2052].)

### 14. *Instruction on Motive*

At the penalty phase the court instructed the jury on motive as follows: "Motive is not an element of any crime and need not be shown. [¶] However, you may consider motive or lack of motive as a circumstance in this case. [¶] Presence of motive may tend to establish guilt, absence of motive may tend to establish innocence. [¶] You will, therefore, give its presence or absence, as the case may be, the weight to which you find it to be entitled."

 Defendant contends the court erred in giving this instruction because motive is irrelevant to the issue of penalty. The People, on the other hand, assert that the instructions on motive related to the jury's duty to determine whether defendant had committed the violent criminal activity alleged. We agree that motive would have some relevance to that question, but we are unable to find that the instructions adequately connected the question of motive to the alleged violent criminal activity.

The very irrelevance of the question of motive shows the harmlessness of the error in giving the instruction during the penalty phase. There is no reasonable possibility that the jury would have reached a more favorable result had this instruction not be given. (See *People* v. *Brown, supra,* 46 Cal.3d at p. 448.)

### 15. *Failure to Find Premeditation and Deliberation*

The jury was instructed on a single theory of first degree murder—felony murder. **(20)** Defendant contends that the failure to require a finding that the murder was premeditated and deliberate denied him equal

protection of the laws. Defendant's argument is premised on the theory that felony murder is less culpable than premeditated murder, i.e., that in California a defendant who commits felony murder during the course of certain felonies is eligible for capital punishment whereas a defendant who commits deliberate and premeditated murder, without more, is not. Defendant submits that such a scheme, whereby those with less criminal intent may nevertheless be punished more severely, is prohibited by the equal protection clauses of both the California and United States Constitutions.

We rejected this argument in *People v. Anderson* (1987) 43 Cal.3d 1104 [240 Cal.Rptr. 585, 742 P.2d 1306], where in reconsidering the intent-to-kill requirement of *Carlos v. Superior Court, supra,* 35 Cal.3d 131, we stated: " '[W]e are no longer of the opinion that the reading of section 190.2(a)(17) that we adopt today raises grave and doubtful constitutional questions under the Eighth Amendment and the equal protection clause by creating 'a statutory classification which impose[s] a minimum penalty of death or imprisonment without parole upon persons who did not intend to kill, while permitting some deliberate killers to escape with a sentence of life with possibility of parole . . . .' (35 Cal.3d at p. 148.)" (*People v. Anderson, supra,* 43 Cal.3d at pp. 1146-1147.) We further stated: "It also appears to be generally accepted that a death penalty law that makes the felony murderer but not the simple murderer death-eligible does not violate the equal protection clause." (*Id.* at p. 1147.)

Defendant's argument also fails because the jury here found, in accordance with the then requirement of *Carlos,* that with respect to the burglary and robbery special circumstances defendant intended to kill Mrs. Vasquez.

### 16. *Constitutionality of Statute*

Defendant advances a number of constitutional challenges to our death penalty law, which he concedes have been rejected before:

1. The lack of a requirement, that a death verdict be based on a jury finding beyond a reasonable doubt that the aggravating circumstances are so substantial in comparison with the mitigating circumstances that they warrant death instead of life without parole, denies due process and violates the Eighth Amendment. We held to the contrary in *People v. Rodriguez* (1986) 42 Cal.3d 730, 777-779 [230 Cal.Rptr. 667, 726 P.2d 113], and have repeatedly declined to reconsider that holding. (See, e.g., *People v. Melton, supra,* 44 Cal.3d at pp. 762-763; *People v. Jennings, supra,* 46 Cal.3d at p. 992.)

2. The lack of a requirement, that a verdict of death be based on a jury finding beyond a reasonable doubt that the aggravating circumstances

outweighed the mitigating circumstances, violates due process and the Eighth Amendment. We have consistently rejected this argument as well. (See, e.g., *People* v. *Rodriguez, supra,* 42 Cal.3d at pp. 777-779; *People* v. *Gates, supra,* 43 Cal.3d at p. 1201; *People* v. *Melton, supra,* 44 Cal.3d at pp. 762-763.) We are not persuaded by defendant's argument for reconsideration of our holding in light of *State* v. *Biegenwald* (1987) 106 N.J. 13 [524 A.2d 130]. The court's holding there was based on the amendment of a New Jersey statute in 1985 to add a requirement that the jury's finding be beyond a reasonable doubt. Our statute has no such provision.

3. Due process and the Eighth Amendment require a written statement by the jury of the evidence relied on and the reason for imposing the judgment of death. We have held to the contrary in many decisions and are not persuaded to reexamine the question. (See, e.g., *People* v. *Rodriguez, supra,* 42 Cal.3d at pp. 777-779; *People* v. *Belmontes* (1988) 45 Cal.3d 744, 805 [248 Cal.Rptr. 126, 755 P.2d 310]; *People* v. *Adcox, supra,* 47 Cal.3d at p. 251.)

### 17. *Unanimity on Aggravating Factors*

 Defendant contends that the trial court erred in instructing the jury that they did not need to agree unanimously on the same factors in aggravation. We have consistently held that unanimity with respect to aggravating factors is not required by statute or as a constitutional procedural safeguard. (*People* v. *Rodriguez, supra,* 42 Cal.3d at pp. 777-778; *People* v. *Miranda, supra,* 44 Cal.3d at p. 99; *People* v. *Caro* (1988) 46 Cal.3d 1035, 1057 [251 Cal.Rptr. 757, 761 P.2d 680].)

### 18. *Unanimity as to Uncharged Offenses*

 Defendant contends that the court erred in instructing the jury that "unanimous agreement by all 12 jurors that the defendant did commit such a criminal activity is not a prerequisite to a single juror's consideration of such criminal activity as a factor in aggravation if that single juror is satisfied beyond a reasonable doubt that the defendant did commit such criminal activity."

Defendant acknowledges that we rejected this contention in *People* v. *Miranda, supra,* 44 Cal.3d at page 99, and *People* v. *Ghent* (1987) 43 Cal.3d 739, 773-774 [239 Cal.Rptr. 82, 739 P.2d 1250]. Defendant presents no compelling argument for reexamination of those decisions.

### 19. *Prosecutorial Misconduct*

During closing argument the prosecutor stated: "You can put him in that prison setting and forget about him. Say he is in prison, with other

criminals, good enough. [¶] Maybe he will get angry, maybe someone will call him boy in prison, maybe someone will remind him of his mother or his stepfather, and he will take a prison knife and stab somebody in prison. [¶] Big deal. Big loss. Only a prisoner. [¶] But some of those people in prison are not like Freddie Taylor, some of them—most of them, nearly all of them, other than a very small set who may be in a different area—" Defense counsel objected, stating, "There is no evidence of the character of the population prison in the state of California—" The court overruled the objection.

■■■ Defendant contends that the prosecutor committed misconduct by arguing that if defendant were given a life term he might kill another prisoner. Defendant did not raise this objection below. We note, however, that we have consistently held that it is not misconduct for a prosecutor to argue at the penalty phase that if a defendant were sentenced to prison he might kill another prisoner.[11] (See, e.g., *People* v. *Miranda, supra*, 44 Cal.3d at pp. 110-111; *People* v. *Poggi* (1988) 45 Cal.3d 306, 337 [246 Cal.Rptr. 886, 753 P.2d 1082]; *People* v. *Silva* (1988) 45 Cal.3d 604, 639 [247 Cal.Rptr. 573, 754 P.2d 1070].) Defendant attempts to distinguish those cases on the ground that there is no evidence he ever attacked anyone in prison, but he overlooks the fact that this was true in the other cases as well. The evidentiary support for the argument arises from defendant's record of violence outside the prison walls.

### 20. Cumulative Effect of Penalty Phase Errors

Defendant asserts that the combined effect of penalty phase errors requires reversal of the death penalty verdict. We disagree. There is no reasonable possibility that the jury would have rendered a different verdict in the absence of any errors during the penalty phase. (*People* v. *Brown, supra*, 46 Cal.3d at p. 448.)

### 21. Motion for Modification of Verdict

■■■ Defendant contends that the record fails to clearly establish that the trial judge made an independent determination that death was the appropriate penalty. We disagree. In making its ruling, the court began by noting that "section 190.4 subdivision (e) . . . requires this Court to review the evidence, take into account and be guided by the aggravating and mitigating circumstances and I must make a determination whether the

---

[11] Arguments by counsel are to be distinguished from the introduction of expert testimony regarding a defendant's future dangerousness. The prosecutor may argue the point, but the prosecutor may not initiate the introduction of expert testimony on it. (See *People* v. *Miranda, supra*, 44 Cal.3d at p. 111.)

jury's findings and verdict, that the aggravating circumstances outweighed the mitigating circumstances, were contrary to the law or the evidence." The court further stated: "I have reviewed all of the evidence including the testimony presented during both the guilt, special circumstances and penalty phases of this trial. I have examined and reexamined the exhibits introduced into evidence." The court proceeded to review the evidence and make findings, giving reasons therefor.

The court announced its ruling as follows:

"Now, as required by law, and having considered all of the evidence and being guided by the factors just discussed, it is the further finding of this Court beyond a reasonable doubt that the aggravating circumstances far outweigh the mitigating circumstances. It is, therefore, the Court's further finding that the jury's verdicts and findings are not only supported by the overwhelming weight of the evidence, but upon an independent review are not contrary to law or the evidence. It is, therefore the determination and finding of this Court that the defendant's statutory automatic application for modification of the death sentence is denied."

Our review of the record leaves no doubt that the court understood and complied with its duty to independently reweigh the evidence of aggravating and mitigating circumstances and then to determine whether, in its independent judgment, the weight of the evidence supported the jury's verdict. (See *People* v. *Lang* (1989) 49 Cal.3d 991, 1045 [264 Cal.Rptr. 386, 782 P.2d 627].)

22. *Execution of Sentence*

The trial court pronounced judgment of death in the present case on May 30, 1986. On June 4, 1986, the trial court imposed a determinate term of 18 years and 8 months for crimes for which defendant was convicted in Contra Costa County Superior Court Docket Numbers 30929 (other than the capital crime) and 30285 (the Coleman and Kegler crimes). The determinate term was ordered to run concurrent "to any prior incompleted sentence, to wit: Death."

Defendant argues that he may not be executed until he has served his determinate term. His contention is unsupported by logic or apposite authority.

CONCLUSION

The judgment is affirmed in its entirety.

Lucas, C. J., Broussard, J., Eagleson, J., Kennard, J., and Arabian, J., concurred.

**MOSK, J.**—I concur in the judgment. After review, I have concluded that none of defendant's contentions warrants reversal.

I write separately to explain why I reject two specific claims.

First, the prosecutor did not commit misconduct when he argued that defendant's alleged dangerousness in prison bore on the question of punishment.

Under the 1978 death penalty law, the circumstances material to sentence are those defined in Penal Code section 190.3. (*People* v. *Boyd* (1985) 38 Cal.3d 762, 772-776 [215 Cal.Rptr. 1, 700 P.2d 782].) The aggravating circumstances do *not* include future dangerousness. (See Pen. Code, § 190.3.) The mitigating circumstances, however, embrace anything that the defendant proffers as a basis for life. (*People* v. *Boyd, supra,* 38 Cal.3d at pp. 775-776.) When a defendant presents evidence or argument to demonstrate that he would not be dangerous in prison, the People may attempt to show the contrary. (*People* v. *Gordon* (1990) 50 Cal.3d 1223, 1270 [270 Cal.Rptr. 451, 792 P.2d 251].) Here, defendant offered such evidence and argument. The prosecutor's remarks constituted a proper response.[1]

---

[1] I recognize that some of our cases may be read to suggest that under the 1978 death penalty law, the People may *always* argue future dangerousness *in every case.* The source of this mischievous notion is dictum in the plurality opinion in *People* v. *Davenport* (1985) 41 Cal.3d 247, 288 [221 Cal.Rptr. 794, 710 P.2d 861]. The dictum does not even acknowledge *People* v. *Boyd, supra,* 38 Cal.3d 762, or its teaching. It merely—and ineffectively—attempts to distinguish *People* v. *Murtishaw* (1981) 29 Cal.3d 733 [175 Cal.Rptr. 738, 631 P.2d 446]. In that case—which was decided under the 1977 death penalty law (Stats. 1977, ch. 316, § 4, p. 1256 et seq.)—we held that expert opinions on future dangerousness could not be presented. (29 Cal.3d at pp. 767-774.) We reasoned: "(1) expert predictions that persons will commit future acts of violence are unreliable, and frequently erroneous; (2) forecasts of future violence have little relevance to any of the factors which the jury must consider in determining whether to impose the death penalty; (3) such forecasts, despite their unreliability and doubtful relevance, may be extremely prejudicial to the defendant." (*Id.* at p. 767.) To support its dictum, the *Davenport* plurality stated that prosecutorial argument on future dangerousness is not prohibited by the United States Constitution. (41 Cal.3d at p. 288.) That, of course, is beside the point: the question is whether such comments are barred by the 1978 death penalty law. The *Davenport* plurality also implied that argument by a prosecutor is not as potentially prejudicial as opinion by an expert. (*Ibid.*) That, too, is of no consequence: unless and until the issue is raised by the defendant, future dangerousness is simply immaterial under the 1978 death penalty law.

Second, the trial court did not seriously err in instructing the jury on the process of determining penalty. To be sure, it should not have declared that "Before the jury can return a verdict of confinement in the state prison for life without possibility of parole, all 12 jurors must agree that the factors in aggravation do not outweigh the factors in mitigation." To the contrary, jurors may determine that aggravating factors outweigh mitigation and nevertheless conclude that life without possibility of parole is the appropriate sentence. The instruction given in this instance by the trial judge had the potential to skew the jury's sentencing discretion in favor of death and against life, and certainly should not be delivered in the future.

In this case, however, the threat was avoided. The trial court also stated: "If the mitigating evidence gives rise to compassion or sympathy for the defendant, the jury may, based upon such sympathy or compassion alone, reject death as a penalty. [¶] A mitigating factor does not have to be proved beyond a reasonable doubt to be considered. [¶] You may find that a mitigating factor exists, if there is any substantial evidence to support it. [¶] Moreover, the law does not require that you find the existence of any mitigating factor before you choose life without the possibility of parole over death."

Accordingly, having concluded that none of defendant's contentions warrants reversal, I concur in the judgment.

Appellant's petition for a rehearing was denied March 13, 1991.